## CECIL WATTS v. STATE.

No. A-10177. April 28, 1943.

(137 P. 2d 268.)

Hughes & Dickson, of Guymon, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Geo. M. Frittz, Co. Atty., of Guymon, for defendant in error.

BAREFOOT, J. Defendant, Cecil Watts, was charged in the district court of Texas county with the crime of driving a motor vehicle while under the influence of intoxicating liquor, was tried, convicted and sentenced to serve a term of six months in the State Reformatory at Granite, and has appealed.

For a reversal of this case the following assignments of error are presented:

"1st. The court erred in refusing to sustain the defendant's demurrer to the evidence at the close of the state's evidence.

"2nd. The court erred in giving to the jury its instruction number three over the objection and exception of the defendant.

"3rd. The court erred in giving to the jury its instruction number four over the objection and exception of the defendant.

"4th. That the verdict, judgment and sentence herein is excessive and unwarranted by the evidence."

There was a conflict in the evidence in this case. We will give a brief summary thereof.

Defendant is a married man and has four small children. On the 1st day of March, 1941, he was working as a farm hand for W. V. Wilkinson, on his farm six miles northwest of Texhoma. He was the owner of an automobile coupe, which he had purchased from Mr. Wil-

kinson some four to six months prior to that date. On the evening of March 1, 1941, the defendant in company with R. B. Thrasher, and F. S. Brady, who also was working for Mr. Wilkinson, went from Texhoma to the town of Guymon, in Texas county, in defendant's car. They arrived there near 10 o'clock at night, and drove through the city to a new dance hall, found it closed and then drove back through the main street of Guymon to the Shamrock filling station and cafe. All three of the parties got out of the car and went into the cafe. The record does not reveal how long they were there, but evidently only a short time. They returned to the car and drove about a block, when they were arrested by two officers, placed in jail and defendant was charged with the crime of driving a motor vehicle upon the public highway while under the influence of intoxicating liquor.

To sustain the charges, the state presented four witnesses: Clay Hughes, Glenn McIntire, L. L. Neald and Daniel W. Hansen.

Clay Hughes was a deputy sheriff, and Glenn McIntire the night watchman. They testified that they were given the number of defendant's car by Mr. Neald and Mr. Hansen and asked to pick up whoever was driving the same. They drove to a place near the Shamrock filling station and cafe, and saw the car parked there, but there was no one in it. They waited a few minutes, and all three of the parties appeared and got in the one-seated coupe. They followed the car about a block and stopped it, arrested all three of the parties and placed them in jail. Both of the officers testified that the defendant and F. S. Brady were drunk, but that R. B. Thrasher was not. Both officers testified that R. B. Thrasher was driving the car when they stopped them, and that they at no time saw the defendant driving the

car. Mr. McIntire, the night watchman, did testify that he saw the defendant arguing with Mr. Thrasher as to who would drive the car, but he could not hear any conversation between them. He assumed that it was with reference to who would drive the car.

The witness L. L. Neald testified that he was standing on Main street in Guymon about 10 o'clock on the night of March 1, 1941. That he saw a black coupe pass him, going south, with two or more persons in it, and that it was within his vision for a minute or a minute and a half. He identified the defendant Cecil Watts as being the one who was driving the car. He was standing on the corner about 15 or 25 feet from the car. He testified that the car was going at a rather fast rate of speed, and was across the center of the street; that he saw another car dodge this car and go to the curb, and that an elderly lady whom he did not know was almost struck by the car. He testified that he was not personally acquainted with the defendant, but had seen him in a store one time, several months before this date. He also testified that an electric light was burning at the corner where he saw defendant, and this enabled him to recognize the defendant through the space occupied by the window of the car, which was down.

The witness Daniel W. Hansen testified that he, with his family, was driving north on the main street of Guymon at about 10 o'clock on the night of March 1, 1941. That a black coupe, with three parties in it whom he did not know, was approaching from the north. That they were across the center section of the street, and that he quickly drove his car to the curb to avoid being struck by the coupe. He followed the car and saw it park near the Shamrock filling station and cafe. He took the number, and he and Mr. Neald reported what

had happened to officers Hughes and McIntire. He testified that he did not know which of the three was driving the car, and could not testify that the defendant Cecil Watts was driving the same.

From the above statement, it cannot be said that the court erred in refusing to sustain the demurrer to the evidence as a question of law by reason of the evidence of the witness Neald, but his evidence may hereafter be considered with reference to all the evidence offered in the trial.

The defendant Cecil Watts testified that he and his two companions, R. B. Thrasher and F. S. Brady, left Texhoma and drove to Guymon, arriving there near 10 p. m. That they went first to a dance hall in the edge of the city, that it was closed, and they then drove through the main street of Guymon to the Shamrock filling station and cafe, all got out of the car and went into the cafe but soon returned to the car and had driven about one block when they were arrested, as stated by the officers. He further testified that at no time from the time they left Texhoma until they were arrested had he driven the automobile in which they were riding, but that the same had at all times been driven by R. B. Thrasher. He denied being drunk and testified that he had drunk but one bottle of beer. He did not state when or where this had been drunk.

The witness F. S. Brady corroborated the testimony of defendant in every detail with reference to the car being driven by R. B. Thrasher from the time they left Texhoma until the time of their arrest.

The witness Neald had testified that he saw the defendant through the space occupied by the west front window of the car which was down. The defendant and several witnesses testified that the glass had been broken

from this window and had been replaced by a piece of ply-wood. The defendant and Brady testified that the window was raised when they went through the main street of Guymon, and that it would have been impossible for the witness to have seen through the same. While it may be stated there is a conflict in this evidence, it is only by reason of the evidence of the witness Neald. While it is true that the jury is the judge of the facts, and their verdict will not be set aside when the evidence is conflicting, the evidence in this case on behalf of the state is far from satisfactory in view of the evidence in this record.

It is next contended that the court erred in giving instruction No. 3, which was as follows:

"Therefore, in this case, if you find from all the facts and circumstances, and beyond a reasonable doubt, that Cecil Watts, did, in Texas county, Oklahoma, on or about the 1st day of March, 1941, unlawfully, wrongfully, wilfully and feloniously operate, propell and drive a certain motor vehicle, to-wit: one Ford V-8 coupe with Oklahoma license tag No. 66-2045 thereto attached, along, upon and over a public highway in the county of Texas and State of Oklahoma, towit: along, upon and over Main street in the city of Guymon, Oklahoma, south on said Main street of the city of Guymon, Oklahoma, from a point unknown to your informant to the intersection of U. S. Highway No. 54, then and in that event you should find the defendant guilty and fix and assess his penalty at any period of time in the penitentiary, not to exceed one year, or by a fine of not more than $200, or by both such imprisonment and fine. Otherwise, you should find the defendant not guilty."

This instruction was the main one given by the court as to the determination of the guilt or innocence of the defendant. From a reading of the same, it will be noted that the court instructs the jury that if they find from

all the facts and circumstances that the defendant did operate a motor vehicle over the public highway, "then in that event you should find the defendant guilty," etc. This instruction nowhere informs the jury that it was necessary for the defendant to be under the influence of intoxicating liquor at the time of operating the motor vehicle, but to find the defendant guilty if he operated the same. It is contended by the state that this instruction should be considered in the light of all the instructions given. This may be true, but this instruction is so palpably wrong that it occurs to us that it could not be construed with other instructions given to the end that it may be said that defendant's rights were not prejudiced by the giving of the same.

Instruction No. 1 quoted the information. Instruction No. 2 gave the penalty, defined "motor vehicle," "highway," and the term "under the influence of intoxicating liquor." Instruction No. 4 was a special instruction with reference to 3.2 beer. The first part of this instruction was: "You are instructed that a person can become under the influence of intoxicating liquor by drinking 3.2 beer." This is an instruction upon the weight of the evidence, and should have been covered by a general instruction, if given at all. Instruction No. 5 was with reference to the assessment of the punishment by the jury. Instruction No. 6 was upon the presumption of innocence. No. 7 was upon reasonable doubt; No. 8 upon the burden of proof; Nos. 9, 10, and 11 upon credibility of the witnesses, and the weight to be given to their testimony; No. 12 as to argument of counsel; and No. 13 instructed the jury as to their conduct.

It will thus be seen that none of the instructions, with the exception of No. 4, which was more of a special than a general instruction, referred to the fact that it

was necessary for defendant to be under the influence of liquor at the time of driving the car, if he did in fact drive the same. This instruction was with reference to when defendant would be considered under the influence of intoxicating liquor, and did not refer to driving or operating a motor vehicle upon the public highway.

If this case is to be retried, we desire to call attention to two parts of the record. The defendant while on the witness stand was asked by the county attorney: "Q. Well, were you ever arrested or convicted for violation of the prohibitory liquor laws in any state of the Union?" No objection or exception was taken to the asking of this question, and therefore defendant is not in position to complain of it here. On a retrial of this case, if it is had, we suggest that it is proper to ask a defendant when he takes the witness stand, only for the purpose of affecting his credibility, if he has been convicted; not if he has been arrested. He may be asked if he has been arrested *and* convicted, but not arrested *or* convicted. The court, after the defendant had already answered the question in the presence of the jury, sustained an objection thereto on the ground that it was a conviction of a misdemeanor and not a felony. Under the law this would make no difference. The jury, however, should have been instructed that this evidence was permitted only for the purpose of affecting the credibility of the witness. Abby v. State, 72 Okla. Cr. 208, 114 P. 2d 499, 115 P. 2d 266; Pressley v. State, 71 Okla. Cr. 436, 112 P. 2d 809; Key v. State, 10 Okla. Cr. 206, 135 P. 950.

The record also reveals that during the closing argument of the county attorney, he said: "Why didn't they put Thrasher on the witness stand? I think you know, gentlemen of the jury—it was for a reason I don't care to divulge."

An objection to this argument was overruled by the court. No motion was made requesting the court to instruct the jury not to consider the same. We think this argument was highly improper. The name of R. L. Thrasher was endorsed upon the information as a witness for the state. He was present at the time of the trial. The state did not use him. This they had a right not to do. The defendant closed his case without placing him upon the witness stand. The evidence in this case was very close, and there now remains in our mind a doubt as to the guilt of the defendant. The county attorney owes a duty to the state and also to the defendant. If he honestly thought, as he attempted to argue to the jury, that the witness Thrasher would have testified that the defendant was driving the car, he should have placed him on the witness stand and given the jury the benefit of his testimony. His testimony would have either broken or made his case, and to our mind, when the defendant closed his case and testified as he did, the county attorney should have placed the witness Thrasher upon the stand. If his testimony corroborated the defendant and the witness Brady, he could have moved for a dismissal of the case. If he testified for the state, his case would have been of that character which would have justified the jury in returning a verdict of guilty. Certainly he did not have the right in his argument to insinuate what his evidence would have been when he had an opportunity to place him on the stand and did not do so. What the jury desired to know, and what this court desires to know, is, was the defendant guilty of the crime charged? The county attorney should only be interested in proving this fact. We think that under the facts and circumstances in this case he should have placed the witness, Thrasher, upon the stand after defendant had closed his case without doing so.

On the date this defendant was charged, March 3, 1941, the crime was a felony in this state. Since that date, and on March 29, 1941, the Legislature of this state enacted a law making the first offense for driving an automobile while under the influence of intoxicating liquor a misdemeanor, and the second offense a felony. This statute has been referred to in the case of Phenis v. State, 76 Okla. Cr. 150, 135 P. 2d 62, and in Bilbrey v. State, 76 Okla. Cr. 249, 135 P. 2d 999, decided by this court on April 7, 1943.

For the reasons above stated, the judgment and sentence of the district court of Texas county is reversed and remanded.

JONES, P. J., and DOYLE, J., concur.