Bertha Mae DORSEY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16475.

Court of Criminal Appeals of Oklahoma.
July 28, 1971.

Larry M. Weber, Olustee, for plaintiff in error.

Larry Derryberry, Atty. Gen., H. L. McConnell, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Bertha Mae Dorsey, hereinafter referred to as defendant, was charged in the District Court of Jackson County with the offense of Murder; she was found guilty of the offense of Manslaughter, and her punishment was set at eight years imprisonment. From said judgment and sentence, a timely appeal has been perfected to this Court.

Because of the propositions raised, we do not deem it necessary to recite a detailed statement of facts. The State's evidence revealed that on July 3, 1970, the defendant, James Birch, and four other persons, went to the defendant's home in Altus. They had all been together for some time that day, and most of them had been drinking at the home of the defendant's sister. James Birch was the defendant's boy friend, and they had lived together from time to time for several years. Everyone but the defendant sat down in the living room; Birch sat by the stereo. The defendant made several trips back and forth from the kitchen filling up an air conditioner. Birch followed her into the kitchen at least once. The defendant and Birch appeared to be arguing. Arthur Carter testified that the defendant started firing a pistol at Birch, who was sitting in the chair by the stereo. He did not see anything in Birch's hand while three shots were fired. Birch got up and ran behind the defendant's mother. Carter observed a knife in Birch's boot earlier. This knife was later found with the blade open on the floor. Troy Williams' testimony was similar to that of Arthur Carter. Birch died approximately one hour later in the hospital from a gunshot wound. He was shot three times.

The defendant introduced testimony to the effect that Birch was extremely cruel to the defendant. They lived together, and would break up, and then go back together. He beat her several times, and made threats toward her. The defendant was described as even-tempered and non-violent. Hannah Williams, the defendant's mother, testified about her daughter's stormy relationship with Birch. She was sitting on the couch when the shots were fired. Birch followed the defendant into the kitchen as she was making the trips with the water for the air conditioner, and was arguing with her. Birch started to get up, and he started feeling in his boot when the defendant fired the shots. She did not see a knife in his hand.

The defendant testified that she had lived with Birch for periods since 1966. They broke up approximately nine times because of the misconduct of Birch toward her. He beat her and cut her with his knife several times. The day in question, they had one of their habitual arguments, and she was determined that she was not going back to him. Birch followed her into the kitchen, and said that he was going to kill her. She went into the bedroom, got the gun, and placed it in her bosom. She re-entered the room to continue filling the air conditioner, when Birch pulled the knife from his boot, and started toward her. She set down the water, pulled out the gun, and started firing in self-defense.

The first proposition contends that the trial court erred in failing to properly

admonish the jury not to consider statements of the District Attorney, or testimony of other offenses alleged to have been committed by the defendant. The following transpired wherein the prosecuting attorney was cross-examining the defendant concerning her husband:

"Q. I'm talking about other than that. Did Daniel ever mistreat you?

A. We had arguments, yes.

Q. You had arguments. As a matter of fact you shot Daniel, didn't you?

MR. WEBER: Your Honor, we would object to this, as to other offenses; we would also move for a mistrial at this time.

THE COURT: Overruled.

(Whereupon, the following proceedings were had out of the presence of the jury.—Reporter's Note.)

MR. WEBER: Comes now the defendant and moves the court to admonish the jury not to consider the last question asked by the Assistant District Attorney, Hal Grider, and instruct the jury not to consider it in any way what so ever; and objects to other testimony of similar nature that may be offered. Whereupon, the defendant requests that upon such being done, that the trial proceed; upon the Court admonishing the jury as requested, the motion for a mistrial will be withdrawn.

MR. GRIDER: Comes now the State of Oklahoma and offers the following testimony by way of cross examination of the defendant who is on the stand: Based on the fact that the defendant has, by the evidence, specifically shown that she is a person of mild character, not quick to temper, and has never assaulted anyone. And if the defendant were permitted to answer the question asked her her [sic] answer would be that in January or February of 1961 she shot, with a pistol, her husband, Daniel Dorsey, in the City of Hobart, Oklahoma.

MR. WEBER: We object to the offer.

THE COURT: The Court will sustain the objection. The evidence on her bad character, in the Court's opinion, cannot be rebutted by specific acts but only by general reputation, by evidence of a bad reputation.

(The following proceedings were had in the presence of the jury—Reporter's Note.)

THE COURT: Let the record show that the Court sustains the objection to the last question asked by the Assistant District Attorney, and will admonish the jury to disregard that question." (T. 325–327)

We have examined the citations of the defendant to support this proposition, and are of the opinion that they are distinguishable from the case at bar in that they deal with evidence of unrelated offenses actually admitted into the trial and presented to the jury. It is readily apparent that the question was not answered, and no evidence was presented to the jury. Defense counsel informed the jury that he would withdraw the Motion for Mistrial if the jury were admonished not to consider it in any way. The court, thereafter, sustained the objection to the question. The defendant did not object to the form of the admonishment, nor did he request that the court further admonish the jury.

The trial court properly sustained the objection, and admonished the jury not to consider it. The defendant was apparently satisfied with the court's ruling at the time of trial, and, absent a showing of prejudice, should not be allowed to complain at this late date.

The final proposition asserts that:

"In murder case it is fundamental error and denial of right of trial by jury for trial court to instruct jury before they have returned formal verdict. That the jury may leave the assessment of punishment to the trial court."

The record reveals that after deliberating for a period of time, the jury returned to

the courtroom and the following proceedings were had:

"THE COURT: The Court will inquire if you have arrived at a verdict?

THE FOREMAN: Only Manslaughter.

THE COURT: You have arrived at a verdict of manslaughter but can't agree on the sentence?

THE FOREMAN: Yes.

THE COURT: Do you think you are hopelessly deadlocked?

THE FOREMAN: I think we have about got it worked out.

THE COURT: If you have, you can go back to the jury room for additional discussion.

THE FOREMAN: May I approach the bench?

THE COURT: Ask your question here.

THE FOREMAN: Are we required to state the years?

THE COURT: You can only put it down if you all do agree yourselves. I can give you an additional instruction and verdict if you cannot agree. You say you have about worked it out. If you haven't, you may retire.

(The jury again returned to the courtroom and the following proceedings were had:—Reporter's note.)

THE COURT: Have the jury arrived at a verdict?

THE FOREMAN: We are still deadlocked on manslaughter.

THE COURT: The Court will give you an additional instruction that you can consider along with the instructions you already have.

(At this time the Court read the additional instruction to the jury. The jury then retired and again returned to court.)

THE COURT: The jury has arrived at a verdict. I will hand the verdict to the Court Clerk and ask her to read it.

(Whereupon the verdict was read by the Court Clerk.)

THE COURT: Is this your verdict, so say you all?

JURORS: Yes." (T. 364–365).

The defendant contends that the jury had not reached a verdict, and could therefore have still convicted the defendant of the crime of Murder, and left her punishment for determination by the jury; and, secondly, that by reason of being so instructed, the defendant was denied her constitutional right to have the jury decide her guilt or innocence, and to assess the punishment accordingly. The defendant relies on 21 O.S. § 707, which provides in part as follows:

"Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith."

In the instant case, the jury returned a verdict of guilty of the crime of Manslaughter in the First Degree, rather than Murder. Therefore, Section 707, supra, is not applicable. When it became apparent that the jury had reached a verdict of Manslaughter, but could not agree on punishment, it was permissible to give an additional instruction in accordance with 22 O.S.1961, § 927. We note that the defendant did not object to the additional instruction, nor did he, at any time, request that the jury be polled. In Disheroon v. State, Okl.Cr., 357 P.2d 236, we stated:

"Where, from an examination of the verdict and the entire record, the intent and purpose of the jury as expressed in their verdict may be clearly ascertained, the verdict will be upheld. * * *"

We have carefully examined the entire record and observe that the trial court took great pains to thoroughly instruct the jury concerning defendant's theory of self-defense. It is apparent that the intent and purpose of the jury in their verdict was to find the defendant guilty of First Degree Manslaughter, and to leave the punishment

to be assessed by the court is clearly ascertainable, and as such, must be upheld.

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

NIX and BRETT, JJ., concur.