Amos Glen WARD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16728.

Court of Criminal Appeals of Oklahoma.

Nov. 12, 1971.

Ungerman, Grabel, Ungerman & Leiter, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Ray Naifeh, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

PER CURIAM:

Amos Glen Ward, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County for the offense of Driving a Motor Vehicle While Under the Influence of Intoxicating Liquor; his punishment was fixed at ten (10) days imprisonment in the county jail and a fine of $100.00, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, A. N. Frazier, age 16, testified that around 2:00 a. m. on March 28, 1971, he was driving an automobile on State Highway #20, west of Memorial in Tulsa County. He observed a vehicle ahead, later determined to have been driven by the defendant, going back and forth on the road, traveling in the same direction in which he was traveling. As he came

over the top of the hill, he observed a station wagon that apparently had been involved in an accident, and he was told by the parties in the station wagon that the car just ahead of them on the road had hit the station wagon. He was asked to stop the car and if he could not stop it, to get the license tag number. Frazier proceeded to stop the car in question, blinking his lights off and on and honking his horn. Defendant responded by pulling over and stopping about a quarter of a mile away from the scene of the accident. He told the defendant that there had been an accident, and asked him to come back to the scene. Frazier testified that he showed the defendant a damaged fender on the defendant's car, and told the defendant that he hit a car, and the defendant stated: "Did I?" The defendant did not say anything further, and followed him back to the scene of the accident. On cross-examination, Frazier testified that he did not see the impact of the two automobiles in question, and that the defendant stopped within five seconds after he honked his horn and flashed his lights.

Emmet Bailey testified that in the early morning hours of March 28, 1971, he had occasion to be on State Highway #20 in Tulsa County, west of Memorial. He observed the car, which was later determined to have been driven by the defendant, weaving and going across the centerline. He pulled over, and changed places with A. N. Frazier, who was a passenger in the automobile, and Frazier began to drive his automobile because he was tired. As they topped a hill, he observed the defendant's car in the left-hand lane of the two-lane highway, and a station wagon, which was slanted in the right-hand lane. The people in the station wagon asked them to try to stop the other vehicle, or to get the license number. Frazier and Bailey proceeded to follow the defendant's car, flashing their lights and honking their horn. The defendant pulled over to the side of the road and stopped. He got out and told the defendant that he had been involved in an accident, and the defendant

stated that he had not hit the other car. They examined the defendant's car, which had the front fender caved in. He testified that as the defendant got out of his car, he wobbled a little bit and moved a little slowly; that he smelled liquor on the defendant's breath, and that in his opinion, the defendant was intoxicated. On cross-examination, he testified that the driver of the station wagon told them that he had had "a drink."

Terry Stewart testified that on the morning in question he was driving his 1965 Buick station wagon on State Highway #20. A car, later identified as being driven by the defendant, was coming in the opposite direction on the highway, and that the defendant's car would not dim its lights, forcing him, Stewart, to drive very slowly. The defendant swerved in front of Stewart's station wagon, and he tried to avoid a head-on collision by running into the other side of the road; however, the defendant ran into the side of his station wagon. The defendant's car did not stop at the scene, and shortly thereafter, two men stopped, and Stewart asked the men to attempt to stop the defendant's car. The defendant returned to the scene of the accident a few minutes later, got out of his car for awhile, and then got back into his car. Stewart testified that it was his opinion that the defendant was intoxicated, but denied that he, himself, had consumed any alcoholic beverages prior to the time of the accident.

Geraldine Palmer testified that she was a passenger in the station wagon being driven by Terry Stewart. She testified to substantially the same facts as did Stewart concerning the accident. She further stated that when the defendant returned to the scene of the accident, she asked him why he had run off and left them after he had hit them, and the defendant did not answer. It was her opinion that the defendant was drunk. On cross-examination, she testified that the driver, Terry Stewart, had not been drinking.

Cecil Chisum testified that he was also a passenger in the Stewart vehicle. His

account of the accident was substantially the same as the previous two witnesses. He testified that after the defendant had returned to the scene and the highway patrolman told the defendant to get out of his car, that the defendant almost fell down. He testified that, in his opinion, the defendant was "pretty drunk." On cross-examination, he testified that Terry Stewart had not been drinking.

Trooper Richard Oldaker testified that he arrived at the scene at approximately 4:45 a. m., and that upon arriving he observed a station wagon with heavy damage done to the right side, sitting in the east-bound lane. After a conversation with Terry Stewart, he approached the defendant's vehicle, and observed the defendant either asleep, or passed out, sitting underneath the wheel. He asked the defendant to step from the car, and the defendant responded, "Yeah, yeah." The defendant reached for the ignition key of the car, and Oldaker reached in and took the key out of the ignition switch. He testified that as the defendant dismounted from his automobile, he was unsure of his balance and had to use the door for support; that his walk was very staggering; and that there was an odor of alcoholic beverage about his breath. He testified that, in his opinion, the defendant was "definitely under the influence." (Tr. 70) Trooper Oldaker testified that he placed the defendant under arrest and advised him of his right to take either a blood test or a breath test. The defendant consented to take the blood test, was taken to a hospital, and a blood test was administered. He also testified that from his investigation at the scene, he determined that the point of impact was three feet left of center, in the Stewart vehicle's lane.

Janet Hedrick testified that she was a medical technologist at the Oklahoma Osteopathic Hospital in Tulsa, Oklahoma, and that she took two tubes of blood from the defendant, which she turned over to the patrol officer.

Don Flint testified that he was a chemist for the Oklahoma State Bureau of Investigation, and that he received one of the test tubes of blood on March 31, 1971; that after conducting a chemical analysis of the blood sample, he found the same to contain 0.17 percent weight per volume of alcohol.

Ray Welch testified that he was a deputy sheriff for Tulsa County and was riding with Trooper Oldaker on the morning in question; that he had an opportunity to observe the defendant at the scene of the accident; and that, in his opinion, the defendant was intoxicated.

The defendant testified that he was the sheriff of Rogers County and had served in that capacity for 18 years; that he also worked for the Oklahoma Cattlemen's Association and as an investigator for a trucking firm; that he was a veteran of World War II, had spent time in combat, and also was a member of the VFW and the American Legion. He testified that on the night in question he was working on a cattle theft case. They had one man in custody and he was looking for another subject, for whom he had a Kansas warrant, who was a suspect in the case. He stated that he first went to the Cherokee Tavern in Bartlesville, Oklahoma, looking for the suspect. He remained in the tavern for approximately 45 minutes and drank a glass of beer. He testified that he drank the beer because, "When you go into a place in plain clothes looking for someone, you don't want to look conspicuous or very obvious sitting there doing nothing, just looking." (Tr. 100) He checked another tavern down the road, and from there, proceeded to "The Fort," which was west of Skiatook, Oklahoma. He remained in that tavern for approximately 45 minutes and consumed two glasses of draught beer. He left this location at approximately 11:00 p. m. and drove back to Rogers County. At approximately 1:15 a. m. he returned to Tulsa County to the same tavern to recheck, and he remained there almost an hour and consumed another beer. He testified that he had been working on the day in question since about 8:00 o'clock the previous morning; that he was returning toward Clare-

more, Oklahoma, he saw the station wagon coming across the road at an angle in front of him, and that it was so close that he did not have time to do anything but cut his car slightly to the left and try to avoid hitting him. He further testified that he barely felt the hit, it glanced off, but he did not check his car and proceeded down the road to find a place wide enough in which to turn around. He traveled for approximately three to four hundred yards, where he was proceeding to turn around when a car came up behind him and told him that there were people in the station wagon who claimed that he had run into their car. He turned around and went back as soon as he could make the turn. He returned to the scene and asked if anyone was hurt, and if anyone had called the highway patrol and someone stated that they had called for a patrolman. He got back into his vehicle to await the highway patrolman's arrival and smoked some cigarettes and then went to sleep. He testified that he pulled over to the left side of the road because it was the only way he could possibly get by the station wagon without the station wagon hitting him. He testified that he voluntarily submitted to the blood test.

On cross-examination, the first question asked the defendant was: "Mr. Ward, have you ever been arrested for the charge of DWI?" The defendant objected, which was immediately sustained by the trial court. The defendant then requested a mistrial and the attorneys adjourned to the court's chambers. The Motion for Mistrial was subsequently overruled. The defendant denied that his car was weaving on the highway prior to the accident, denied staggering, but admitted consuming five beers, rather than the four testified in chief.

Earl Hendricks, Fred Gates and Ed Parks all testified concerning the defendant's reputation as a law-abiding citizen.

Irene Ward, the defendant's wife, testified that they had been married for 30 years, and that the defendant was a sober person.

Trooper Oldaker was called in rebuttal and testified that the walk and talk of the defendant was different from the date of the arrest than defendant's demeanor at the trial. He further testified that on the date in question he asked the defendant why he did not stop his automobile at the scene rather than proceeding down the road, and that the defendant stated that he did not know he had been involved in an accident.

The sole proposition asserts that the trial court committed reversible error in overruling the defendant's Motion for Mistrial after the Assistant District Attorney asked the defendant whether he had ever been arrested for the charge of Driving While Intoxicated. The record reflects that the defendant immediately objected to the question which was sustained by the trial court. Thereafter, a conference was had with the attorneys outside the presence of the jury, and the trial court overruled the defendant's Motion for a New Trial. We observe that the defendant did not request the trial court to admonish the jury to disregard the question.

We have carefully examined the defendant's authorities, and are of the opinion that, with the exception of Hill v. State, 81 Okl.Cr. 342, 165 P.2d 146, the same are distinguishable from the case at bar. In Fox v. State, Okl.Cr., 321 P.2d 445 (1958); Byars v. State, 15 Okl.Cr. 308, 176 P. 253 (1918); Corliss v. State, 12 Okl.Cr. 526, 159 P. 1015 (1916); Fisk v. State, 56 Okl.Cr. 373, 40 P.2d 684 (1935); Watts v. State, 76 Okl.Cr. 362, 137 P.2d 268 (1943), the defendant was permitted, by the trial court, to answer the question if he had been previously arrested or charged for an offense. In Hill v. State, supra, which was similar to the case at bar, the defendant was questioned as follows:

"'Q. Had you ever been charged in a case of this kind before?

Mr. Hall: We object to that for the reason that it is incompetent, irrelevant, and immaterial.

The Court: Sustained.

Whereupon the following proceedings were had out of the hearing of the jury:

Mr. Hall: Comes now the defendant and moves the Court to declare this case a mistrial for the reason that the question just asked the defendant by the counsel for the State is calculated to arouse the bias and prejudice of the jury, and to suggest to the jury that the defendant has been involved in a similar violation prior to this time.

By the Court: Overruled.' "

In modifying the judgment and sentence, we stated:

"In this case, the defendant was employed as a defense worker in an aircraft plant. It is our conclusion, after a careful study of the record, that the question asked by the prosecuting attorney was highly improper and had the effect of causing the jury to assess more punishment than they would have if such question had not been asked. Under these circumstances, it becomes our duty to modify the sentence assessed against the accused.

At the time the question was asked and objection was interposed by counsel for defendant, the prosecuting attorney did not ask any further questions of this nature, or which were prejudicial to the defendant. If he had done so, the error would have been so serious that this court would have had the duty of reversing the conviction. However, the testimony of the State as to the defendant's intoxication and the unsatisfactory nature of the evidence offered by defendant on this point convinces us of defendant's guilt. Under such circumstances, we feel that the asking of this question was not the factor which caused the jury to find the defendant guilty, but that it was so harmful in its effect that it caused the jury to assess an excessive punishment."

In a recent case, Dorsey v. State, Okl.Cr., 487 P.2d 996 (1971), in dealing with a similar question wherein the defendant was charged with killing her common-law husband, the following transpired when the prosecuting attorney was cross-examining the defendant concerning the shooting of her first husband:

" 'Q. I'm talking about other than that. Did Daniel ever mistreat you?

A. We had arguments, yes.

Q. You had arguments. As a matter of fact you shot Daniel, didn't you?

MR. WEBER: Your Honor, we would object to this, as to other offenses; we would also move for a mistrial at this time.' "

Whereupon, as in the instant case, certain proceedings were conducted outside the presence of the jury and upon returning to the courtroom the court sustained the objection and subsequently admonished the jury to disregard the question. In affirming Dorsey, supra, we stated:

"We have examined the citations of the defendant to support this proposition, and are of the opinion that they are distinguishable from the case at bar in that they deal with evidence of unrelated offenses actually admitted into the trial and presented to the jury. *It is readily apparent that the question was not answered, and no evidence was presented to the jury.*" [Emphasis added]

In the instant case we observe that defense counsel did not request that the trial court admonish the jury to disregard the question; the prosecuting attorney did not ask any further questions of this nature, or which were prejudicial to the defendant; the defendant did not, in fact, answer the question; and, further, the evidence of the defendant's guilt is crystal-clear. In overruling the defendant's Motion for New Trial, the trial court stated:

"I would readily give the defendant in this case a new trial just because of that particular question, if the evidence was of such that this would be what could be called a close case or close question in regard to the guilt of the defendant or number two, if the verdict of the jury was

such that it would reflect any amount of, in regard to fixing the punishment, any amount of prejudice or passion by that question. The jury verdict was almost the minimum allowable under the law. The evidence in regard to the guilt was substantial and it was not denied by the defendant when he took the stand that he was under the influence of intoxicating liquor, as a matter of fact, he did admit to the jury of having consumed some alcoholic beverage.

* * * I think that any doubt about the man's character in regard to the question that was asked and the objection sustained would be cured by the testimony of the good nature and good character of this man." (Tr. 135–136)

We are of the opinion that the trial court's ruling was correct; the evidence of defendant's guilt was clear; and the punishment imposed was the minimum which any jury would impose under the circumstances. The judgment and sentence is accordingly affirmed.