Joseph R. ARRIOLA, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–327.

Court of Criminal Appeals of Oklahoma.

Feb. 20, 1974.

Rehearing Denied March 14, 1974.

Lui J. Antonelli, Lawton, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., James C. Peck, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Joseph R. Arriola, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court, Comanche County, Case No. CRF–72–244, for the offense of Burglary in the First Degree; his punishment was fixed at nine (9) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Karen Merritt testified that on January 30, 1972, she lived at 1115 Osmun in Lawton with her two minor children; that at approximately 3:30 a. m. she was awakened by a hand on her shoulder and a gun pointed at her temple. She observed a man, whom she identified in court as the defendant, standing over her bed. Defendant told her to be still and that he

needed someone to talk to. Defendant said that if she was not still, he would shoot both her and her daughter. She recognized defendant's accent as being similar to the accent of her former neighbors from Guam. Defendant started kissing the side of her face and rubbing her arm. She started struggling and screaming and defendant struck her in the eye and ran out of the house. She testified that the lighting in the room was very good from two lights outside shining into the bedroom. She further testified that prior to going to bed she had shut the front door and attempted to lock it. On cross-examination, she testified that on April 1st she was awakened once by a policeman who asked her to come to a lineup; that she attended the lineup and identified the defendant. She testified that there were no other Guamanians in the lineup. She further testified that she had informed her father that she thought the intruder might be the same man that visited her neighbors, the Pangelinan's. She denied seeing defendant at the Pangelinan's house after the incident.

Harold Winkleman, Karen Merritt's father, testified that the day after the incident Karen told him that she thought the intruder might be the person she had seen in the neighborhood driving an old foreign-made car. He gave this information to the police department.

For the defense, Major Gillian of the Lawton Police Department, testified that when defendant was arrested on April 1, 1972, that no weapon was found in his apartment. He further testified that he could find no report made to the police department by Karen Merritt's father concerning the possible identity of the intruder.

Officer Godfrey, of the Lawton Police Department, testified that he investigated the burglary at Karen Merritt's house on the morning in question. He identified the offense report which gave a description of the intruder.

Sergeant Ralph Ford, Sergeant James Brazzell and Captain Chenault testified

that in January and February of 1972, the defendant had a mustache. (For emphasis, Karen Merritt had previously testified that the intruder did not have a mustache.)

Francisco Pangelinan testified that he was a neighbor of Karen Merritt and a good friend of defendant; that defendant visited in his home on many occasions after January 30, 1972; that some time in February, 1972, Karen Merritt came to his house and defendant answered the door.

Barbara Arriola, defendant's wife, testified that defendant wore a mustache in January of 1972; that defendant was home with her on the evening of January 29th and did not leave the house.

The first proposition asserts that defendant's constitutionally guaranteed rights were violated by an illegal in-custody lineup which contaminated and tainted the in-court identification. The record does not reflect that defendant objected to the identification of defendant at trial, nor does the record reflect that the defendant requested an evidentiary hearing. In Bridgeman v. State, Okl.Cr., 496 P.2d 431, we stated:

"The sole proposition asserts that the trial court erred in admitting the courtroom identification of the defendant in that the lineup was not conducted within the procedures set forth in Thompson v. State, Okl.Cr., 438 P.2d 287. We need only to observe that the defendant did not object to the identification of the defendant by the witness Parsons until the conclusion of his cross-examination. The defendant did not at any time prior to or during the course of the trial request an evidentiary hearing. In Davis v. State, Okl.Cr., 467 P.2d 521, we stated:

'* * * We further observe that *in the event the defendant raises a timely objection to the courtroom identification of the defendant* for the reason that it is based on a pre-trial identification by photograph or line-up * * * the trial court should conduct a hearing outside the presence of the

jury and determine if the pre-trial identification procedure was conducted in accordance with the rule enunciated in United States v. Wade, [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149] * * *' (emphasis added)

"In the instant case the defendant did not timely request an evidentiary hearing whereupon the trial court could ascertain if the in-court identification was based on an independent source sufficiently distinguishable to be purged of the primary taint of the illegal pre-trial identification. Absent his timely request in the trial court for an evidentiary hearing, we are of the opinion that this proposition is improperly before this Court."

See also Anthamatten v. State, Okl.Cr., 506 P.2d 959.

■ Although this proposition is improperly before this Court, we observe that the identification was not so tainted as to render it inadmissible and that the identification was made, in fact, from an independent origin. Karen Merritt testified that the bedroom was well lighted from two outside lights and that defendant was in the bedroom for approximately ten minutes. Her identification of defendant at the trial did not waiver despite intensive cross-examination. She further testified that her identification was based on her memory of the incident on the evening in question and that the lineup did not influence or suggest the identification.

■ The second proposition contends that the defendant was unable to properly defend himself due to the variance in the complaining witness' testimony between the preliminary hearing and the trial. We need only observe that the alleged discrepancy in the testimony was submitted to the jury under a proper instruction as affecting the credibility of the witness. Karen Merritt explained the discrepancy and the jury, by their verdict, apparently was satisfied with the explanation.

■ The final proposition asserts that the prosecuting attorney asked an improper prejudicial question of defendant's wife on cross-examination. The record reflects that at the conclusion of the cross-examination of the witness, the following transpired:

"Q. Mrs. Arriola, let me ask you this: Prior to day [sic], have you ever testified for this defendant in support of an alibi wherein the defendant was being tried for a crime other than the one he is charged with today?

"MR. ANTONELLI: And I object to that question, Your Honor.

"BY THE COURT: Will counsel approach the bench.

"MR. ANTONELLI: And I think we have a mistrial. (Side bar conference held, out of the hearing of the jury and the reporter.)

"BY THE COURT: The objection is sustained and the jury is admonished to disregard the last questions.

"MR. WISENER: I have no further questions." (Tr. 108–109).

Although we are of the opinion that this question was highly improper, we do not deem the same to constitute reversible error inasmuch as the question was not answered, the trial court admonished the jury to disregard the question, and the prosecuting attorney did not ask any further questions of this nature. In Ward v. State, Okl.Cr., 491 P.2d 329, in dealing with a similar proposition, we stated:

"In the instant case we observe that defense counsel did not request that the trial court admonish the jury to disregard the question; the prosecuting attorney did not ask any further questions of this nature, or which were prejudicial to the defendant; the defendant did not, in fact, answer the question; and, further, the evidence of the defendant's guilt is crystal-clear."

See also Dorsey v. State, Okl.Cr., 487 P.2d 996.

The judgment and sentence is accordingly affirmed.

BLISS, P. J., and BRETT, J., concur.