Ellis Lorraine THOMPSON, Plaintiff
in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–14957.

Court of Criminal Appeals of Oklahoma.

Nov. 12, 1969.

Jay D. Dalton, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

Robert McCormick, Tulsa, amicus curiae.

BUSSEY, Judge.

Ellis Lorraine Thompson, hereinafter referred to as defendant, was charged by information in the District Court of Tulsa County, Oklahoma, with the crime of murder and found guilty by jury verdict of manslaughter in the first degree, Case No. 22898. Judgment and sentence was imposed on April 22, 1968, in accord with the jury's verdict, sentencing petitioner to a term of not less than one hundred years and not more than three hundred years imprisonment. It is from that judgment and sentence that this appeal has been perfected.

The evidence of the State consisted of the testimony of three investigating police officers, the examining physician, and a Miss Regina Brown. Their testimony indicates that in the early morning hours of September 4, 1967, the defendant entered the residence of Miss Brown in Tulsa,

Oklahoma, awakening her and the deceased, Arnold Bowen. The defendant had been previously acquainted with Miss Brown, who was a seventeen-year old unwed mother and lover of Mr. Bowen. The intimacy of the defendant and Miss Brown's relationship was a matter of some dispute. After an exchange of words between the three, the defendant left the premises and returned a short time later with a revolver. Miss Brown testified that the defendant returned to the house looking for some pictures of himself which were in her possession. Miss Brown told the defendant that Mr. Bowen had left the premises and the defendant was then surprised to confront Mr. Bowen in an upstairs bedroom while looking for the pictures. Miss Brown testified the defendant hit and shot Mr. Bowen in the back of the head. The defendant called an ambulance, took his pictures and left the premises. The investigating police officers found the deceased on a bed in the upstairs bedroom lying over a knife, the blade of which was closed.

The evidence for the defense was mainly the testimony of the defendant. He stated that the events happened essentially as described above, except that he found the deceased and Miss Brown in a compromising posture upon entering the premises and left on demand. The defendant stated that he then returned shortly thereafter with a gun to secure his pictures. All evidence concurs in that the defendant was surprised at meeting the deceased upstairs since Miss Brown informed him that the deceased had departed. Defendant stated that after confronting deceased and asking him not to call the police because he was just looking for his pictures, the deceased attacked the defendant with a knife. Whereupon, the defendant hit the deceased with the gun three times, discharging it accidentally, which resulted in the fatal wound to the deceased. At this point, the defendant called an ambulance, took his pictures from Miss Brown and left the premises. Thus, the defense was one of self-defense.

The first assignment of error which we shall consider involves the contention that the defendant was deprived of his opportunity to secure private counsel, which resulted in the denial of the right to counsel of choice. There can be no doubt that every accused has the right to counsel. Oklahoma Constitution, Article II, Section 20. Title 22 O.S.1961, § 13. However, when an accused is without the funds to secure counsel of his own selection, he must rely upon the counsel appointed by the court to represent him. The right to counsel is premised upon the principle that an accused should have the assistance of a qualified attorney to adequately protect his interests in criminal proceedings.

The facts in the instant case indicate that the homicide was committed on September 4, 1967, with the defendant surrendering himself into custody on September 10, 1967. On September 29, 1967, the information charging murder was filed in the District Court and defendant's arraignment on October 4, 1967, was passed due to the absence of counsel for the accused. On October 11, 1967, the records indicate that defendant was represented by Attorney J. Morgan, with Attorney Elias permitted to withdraw as attorney of record. On application of defense counsel, petitioner was then committed to a state hospital for mental observation. On October 16, 1967, an order by the court was filed appointing Edward F. Montgomery, attorney, to assist John S. Morgan, public defender, in defense of defendant herein. On January 31, 1968, the defendant appeared for arraignment represented by Mr. O. B. Graham, who was appearing for Amos Hall, attorney for defendant. On February 27, 1968, Attorney Hall was allowed to withdraw with Mr. William Hood appointed to defend. On March 4, 1968, Attorney Hood's motion for continuance, due to defendant's refusal to assist in the preparation of his defense, was granted and on March 5, 1968, the trial date was passed to the April docket. The case then came on for trial on April 4, 1968, with the defendant in court and represented by Mr. William Hood, Jr., public defender, Mr. Edward Montgomery, and Mr. Gatra Marvin. At this time, before announcing

ready for trial, defense counsel asked the court to hear his client who requested that he be permitted time in which to secure private counsel of his own selection. The trial judge denied defendant's request, stating that the trial date should not be further delayed since defendant had had sufficient time in which to secure counsel of his own choice.

▆▆▆ From a review of the facts, we find that the defendant was represented during the proceedings either by counsel of his own selection or by court-appointed counsel. We concur with the ruling of the trial court that the accused cannot be allowed to indefinitely delay his trial through a series of changes in the counsel. Defendant had sufficient time and opportunity to secure counsel of his own choice if he were able to do so, and we are of the opinion, from a review of the record herein, that his interests were adequately protected by competent counsel at all times. Accordingly, we hold that petitioner was not denied his right to representation by adequate counsel and dismiss this assignment of error as being without merit.

▆▆▆ It is the further assignment of error that the trial court failed to properly instruct the jury. The defendant contends that the trial court committed error in its Instruction No. 11, regarding the right to self-defense, with the following statement taken from the context of that instruction:

> "And in such case, if the assaulted person is in a place where he has a right to be and the danger is not of his own seeking or willfully provoked by him, he is not required to flee from it, but may resist it with adequate and necessary force until he is safe." (R 383)

It is argued that the defendant was not on the premises of the one slain and therefore should not have been precluded from availing himself of the right of self-defense as was allegedly accomplished by this instruction of the court. It is true that even a trespasser may have the right of self-defense within reasonable bounds, to repel a dangerous, unlawful attack, after he has availed himself of every reasonable means of retreat. Womack v. State, 36 Okl.Cr. 44, 253 P. 1027 (1927). It is also apparent in the instant case that the defendant was not a trespasser on the premises of the deceased. However, after careful review of the entire instruction, we do not conclude that the court instructed the jury that the defendant in the instant case was precluded from the right of self-defense because he was a trespasser. We are of the opinion that Instruction No. 11, regarding self-defense, adequately and properly states the law in that regard and sufficiently covers the theory of defense advanced by the defendant.

We would further note the holding of this court in Gillaspy v. State, 96 Okl.Cr. 347, 255 P.2d 302 (1953), in which this court upheld the accuracy of an instruction which read in part as follows:

> "It is the duty of a person so threatened with danger to his life or person to use at the time all reasonable means apparent to a reasonable person under the circumstances shown to avoid such danger before taking human life, except that he is not bound to retreat to avoid the necessity or apparent necessity of killing, if he is in a place where he has a right to be and has done no act on his part to bring about the necessity for killing." 255 P.2d, at 309.

In *Gillaspy* the defendant was not on the premises of the deceased. We are thus persuaded that the instruction of the court was not a misstatement of the law, but rather that the portion attacked by the defendant as quoted above was a proper statement regarding self-defense and the requirement to retreat. Accordingly, we find no merit to the contention of the defendant in this regard and find no error by the trial court.

Also regarding the instructions, it is contended that the trial court committed error, over objection of defense counsel, in giving two instructions, No. 14A and 14B, regarding the jury's authorization to impose a minimum and maximum sentence of imprisonment after the conclusion of argu-

ment by counsel. The record indicates that after the instructions had been given by the court, and after the conclusions of argument by counsel, but before the case had been submitted to the jury, the trial court gave two further instructions which it had neglected to include with the other instructions. Defendant contends that since the prosecution's closing argument requested that the jury impose a sentence of one hundred to three hundred years, that the court's instructions concerning a minimum-maximum sentence after the conclusion of this argument constituted error since it so prejudiced the jury that it did in fact impose a sentence of a minimum of one hundred years and a maximum of three hundred years imprisonment.

■ There can be no doubt that the instructions concerning the imposition of a minimum and maximum term of imprisonment were proper and correctly stated. Although the giving of these instructions at the close of argument by counsel, rather than with the other instructions, is certainly not a favored practice, it nevertheless does not constitute error. Indeed, 22 O.S.1961, § 831, paragraph 6, expressly allows further instructions at the conclusion of argument by counsel when necessary. In the instant case it appears to be through inadvertence that the instructions on minimum-maximum sentence were deleted from the original charge to the jury. Both the defendant and the State have the right to have the court tell the jury what constitutes the crime and punishment fixed by law for the commission of such crime. Patterson v. State, 44 Okl.Cr. 298, 280 P. 862 (1929). Since the instructions were necessary to adequately charge the jury, it was not error for the court to correct its oversight and give these instructions out of order prior to the case being submitted to the jury for its determination.

■ As a further assignment of error, the defendant contends that the closing argument of the prosecuting attorney was improper and prejudicial on several occasions. Defendant notes that cross examination concerning prior convictions of a defendant who takes the stand is for the purpose of attacking his credibility only. Valenti v. State, Okl.Cr., 392 P.2d 59, at 62 (1964). Defendant contends that the prosecuting attorney went much further than this during his argument regarding punishment when he referred to the defendant's sentence on prior conviction as being too "lenient" and allowing this offense. R 430. In arguing the punishment that should be imposed, the prosecuting attorney referred to the deceased as the "second victim," that the defendant "killed periodically," and refers to the instant case as defendant's "second time out." R 431 and 442.

Regarding further improper argument, defendant cites this court's holding in Harvell v. State, Okl.Cr., 395 P.2d 331 (1964), that:

"The County Attorney's statement that defendant disposed of the body 'which was another crime', was error." 395 P. 2d, at 339.

Defendant then argues as error the argument of prosecuting counsel referring to other offenses committed by the defendant in the course of the crime for which he was on trial, as follows:

"By our evidence he is a burglar, because he broke and entered in the night-time. He is a convicted felon, carrying a gun, which is a violation of the law, punishable up to ten years in the penitentiary itself." (R 435)

Defendant further argues as prejudicial and improper the argument of the prosecuting attorney as to facts that were not in evidence. The prosecuting attorney, in commenting on the facts of the case, said that the defendant left the premises and "got *his* gun;" that defendant was "paralyzed" at the scene; that deceased got off the "*other* divan;" that Miss Brown said "her younger sister came over and got the child." These were incorrect statements of the facts. The prosecuting attorney argued that:

"One witness even went so far as to say, 'he is a real sweet boy.' And there are

two people who no longer draw a breath in this world because of this 'pretty good fellow' who is also 'a very sweet boy.' "

However, the evidence shows that the term "real sweet boy" was used by the prosecuting attorney himself and not by a witness.

Defendant further cites as improper and prejudicial the comments of the prosecuting attorney regarding what the defendant was thinking in his own mind:

"I know that as a second-time killer the potentiality of swift and speedy justice in the death is ultimate and perhaps inevitable, so I flee. And not until I have had time to think up my story, dispose of the weapon, and attempt to build a defense on sand, do I return to my community, and then I cast my lot, not with the Judge, not with the law, but with twelve people who I hope to phase into oblivion intellectually, and walk out." (R 442)

Then the prosecutor's comments on the thoughts of the jurors:

"[A]nd how many times have you sat in your living room and read, with alarm, the shocking rise in crime, and said, why don't they do something about it? Perhaps prosecuting attorneys don't really care about their job. They are not forcing. They are not vigorous. They are not effective. And, maybe we are not, but we do care. *Why are the courts so lenient* that they give a man who pleads guilty to killing another man such little bits of time, four years in the penitentiary, and release them in less than half of that time? (R 434)

\* \* \* \* \* \*

"Turn him loose; let him kill again; and visit that on your conscience." (R 444) (emphasis added)

Defendant further contends that the argument of prosecuting attorney was improper when he referred to certain potential witnesses as not coming forward to testify and contends that these remarks were calculated to draw the inference that defendant failed to call them because they would have destroyed his case. In this regard, the prosecuting attorney's comments were as follows:

"[W]here was Dorris Cannaday, the first person to whose house he fled that night to seek his place of hiding. She wasn't called to testify as to any injury as to the forearm of the accused, or to any other conditions that might have existed. You may reasonably infer that her absence is explained by the fact that had she been called, and taken the stand, and testified truthfully under oath, her testimony would have damaged his case. So she was not called.

"Where is Betty Hook, the nurse—a nurse who could describe the freshness of a wound, the nature of it, looking like a cut—and she wasn't called. Where was Dr. Dunlap, whom we were told on opening statement would be here to testify about the terrible injuries to the right hand? I don't hear you Doctor. I didn't even see you. You didn't either. Whom are we trying to mislead?

"Where is Ricco, whatever his name is? Where is Marco, whoever he might be? Where is Uncle James Earl Thompson, and Mr. Emmet Washington, in Oklahoma City? They didn't come over to talk to you about it either, did they. Where is Alice? Where is Donna Marie? Where is Herb Elias? Who is supposed to be the attorney. Were any of those people called? No. They could have been and their absence is absolutely conclusive testimony that their testimony truthfully given would have damaged the defendant."

Defendant contends that these statements are not permitted by the law in Oklahoma under this court's decision under similar facts in Watts v. State, 76 Okl.Cr. 362, 137 P.2d 268, at 272 (1943):

"Certainly he (prosecutor) did not have the right in his argument to insinuate what his (defendant's) evidence would have been \* \* \*."

There can be no doubt that there is a limit to the latitude which is to be allowed a prosecuting attorney in his closing argu-

ment. In Davis v. State, Okl.Cr., 413 P.2d 920 (1966), this court held:

"It is improper for the county attorney to state his personal opinion as to the defendant's guilt or to state facts not proven by evidence or otherwise given before the jury, that which amounts to his own opinion." 413 P.2d, at 922.

See also Gossett v. State, Okl.Cr., 373 P. 2d 285 (1962), at 287.

Likewise, we note the holding of this court in Mitchell v. State, 408 P.2d 566 (1965):

"However, a prosecuting attorney is a public officer acting in a quasi-judicial capacity. * * * Nothing should tempt him to appeal to prejudice to pervert the testimony, or make statements to the jury which, whether true or not, have not been proved." 408 P.2d, at 573.

We think the references by the prosecuting attorney to the defendant's prior criminal record went beyond the question of his credibility, but served the purpose of influencing the jury as to the punishment imposed. We further think the prosecuting attorney's reference to other crimes committed by the defendant at the scene of the instant crime was improper and prejudicial. We further find that the prosecuting attorney, in his closing argument, did refer to facts which were not borne out by the evidence. We further find as improper the prosecuting attorney's comments on defendant's failure to call certain witnesses as well as his argument which indicated his own personal opinion as to the defendant's guilt.

However, we are of the opinion that the evidence supporting a verdict of guilty was ample and sufficient and that the prejudicial remarks of the prosecuting attorney were prejudicial only to such extent as they resulted in an excessive sentence being imposed. This court has, on numerous occasions, held that where the argument of prosecutor could have influenced the jury's verdict and severity of the penalty, but not as to the question of guilt,

that this court would modify the judgment and sentence in keeping with the ends of justice by reducing the term of imprisonment. Fry v. State, 91 Okl.Cr. 326, 218 P. 2d 643 (1950). We think that would be the appropriate course of action in the present case, particularly in view of the prosecuting attorney's request that the jury impose a term of imprisonment of one hundred to three hundred years, followed by the court's instructions out of order regarding a minimum and maximum sentence, and then the jury verdict imposing a sentence of a minimum of one hundred years to a maximum of three hundred years.

We therefore hold that the judgment and sentence should be modified to fifty years imprisonment, and the judgment and sentence as so modified is hereby affirmed.

BRETT, P. J., and NIX, J., concur.