**Larry Wayne DELANEY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17927.**

Court of Criminal Appeals of Oklahoma.

March 2, 1973.

Jack N. Shears, Ponca City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Amy Hodgins, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Larry Wayne Delaney, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Kay County, Case No. CRF–71–120, for the offense of Distributing Marijuana. His punishment was fixed at four (4) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, John McAuliff, chief chemist for the Oklahoma State Bureau of Investigation, testified that he received State's Exhibit No. 1 from Deputy Sheriff Gary Sinclair. He examined the contents of the exhibit microscopically and chemically and, in his opinion, the substance was marijuana.

Deputy Sheriff Gary Sinclair testified that he received State's Exhibit No. 1 from undercover agents, Gaylon Hayes and Ken Bates, on September 25, 1971. He placed the exhibit in the sheriff's evidence box where it remained until he gave it to John McAuliff.

Sheriff Coffelt described the vault in which all the evidence was secured, including the evidence in the instant case. He testified that the evidence was kept secured in the office vault until Deputy Sinclair was directed to deliver it to John McAuliff.

Gaylon Hayes testified that in September 1971 he was employed as a deputy sheriff in Kay County working in an undercover capacity. He further testified that he and Bates observed the defendant walking in a westerly direction on East Lincoln Street in Blackwell. The defendant waved and they stopped the car. They had a short conversation and he asked the defendant, "Is there any weed in town?". The defendant replied. "Yes, but my stash is in the country and its been raining for two days and I can't get to it. * * * If you'll look me up tonight I'll try to get out to my stash." (Tr. 52) He told the defendant they would see him later and started driving away. He noticed the defendant motioning and he backed the car up to where the defendant was standing. The defendant stated, "I've got a small lid if you're interested." The defendant got into the car and they proceeded at the defendant's direction to a residence on East Lincoln. The defendant went into the house and returned with a plastic sack containing a "green leafy substance." He identified State's Exhibit No. 1 as the plastic sack. He asked the defendant the price and the defendant informed him it was Eight Dollars ($8.00). They proceeded to an ice cream shop in Blackwell and after obtaining change, paid the defendant the $8.00. They proceeded to Tonkawa and gave State's Exhibit No. 1 to Gary Sinclair.

For the defense, Kenneth Bates testified that he worked in Kay County as an undercover agent in September 1971. He received books, tuition, rent and had a part-time job working for the county commissioners as remuneration for his undercover work. He testified that he met the defendant at a party and observed him on several occasions thereafter. On the afternoon in question, he introduced the defendant to Gaylon Hayes. His testimony as to the marijuana transaction did not differ substantially from the testimony of Hayes.

The defendant testified that he spent one year in Viet Nam in the Navy. While in Viet Nam, he became exposed to the use of marijuana. He first met Bates at a party in Blackwell. Bates stated that he was getting a big stash in about a week and wanted to know if he knew where he could get rid of it. He saw Bates at other parties and Bates gave him what he said to be marijuana and THC. Bates introduced him to Hayes on the afternoon in question. He remembered that he had part of a lid that he had gotten at a party and offered to give it to them. They gave him a Ten Dollar bill and he said, "Man, that's too much." He agreed to take Eight Dollars ($8.00) for it. He testified that State's Exhibit No. 1 was not the same substance that he sold to Hayes. The substance he sold to Hayes was more dried out and "awful brown." He did not know if the substance was marijuana or not but admitted, "I think it was marijuana." (Tr. 112)

■ The first proposition of error asserts that the defendant was denied his right to a speedy trial in that the alleged sale occurred on September 25, 1971 and the charges were not filed until November 8, 1971. Defendant asserts as authority Grace v. Harris, Okl.Cr., 485 P.2d 757. We are of the opinion that the instant case is distinguishable from Grace. In Grace,

*supra,* we held that a nine month lapse before filing charges without showing good cause for the delay was a denial of due process. In the instant case, the State delayed filing the charges for six weeks during which time the defendant was at liberty and the undercover investigation was continuing. Considering the time, expense and training involved in obtaining a competent undercover agent it would cast an undue burden upon the prosecution to require that the identity of the undercover agent be disclosed by filing charges immediately after each purchase. We are of the opinion that there was good cause to delay the filing of the instant charge. We further observe that defendant has totally failed to show how he was prejudiced by the delay. We, therefore, find this proposition to be without merit.

■ The second proposition contends that the statute under which the defendant was tried is unconstitutional and contrary to Article 4 of the Oklahoma Constitution. Title 63 O.S., § 2–401 provides that a sentence received under said statute shall not be subject to statutory provision for suspended sentence, deferred sentence or probation. The defendant argues that the power of a trial court to suspend the execution of a sentence is an exclusive power of the judiciary and that any infringement thereon by the legislature violates the concept of separation of powers. In dealing with a similar proposition in the recent case of Black v. State, Okl.Cr., A–17, 217, we stated:

"In conclusion, we observe that the provision of 63 O.S.1971, § 2–401, which prohibits the suspension of a sentence upon conviction of the sale of the enumerated items is constitutional. We further observe that such prohibition does not represent an encroachment upon the Judicial Branch by the Legislature, nor does the same violate the Fifth, Eighth, or Fourteenth Amendments to the Constitution. * * *"

■■ The third proposition asserts that the trial court erred in not instructing on the lesser included offense of possession of marijuana. Defendant argues that the evidence adduced that the defendant had possession of the marijuana prior to making the sale to the undercover agent. We need only observe that the defendant did not request an instruction on possession of marijuana. Defendant elected to assert the defense of entrapment, which instruction was given by the trial court. We have consistently held that where counsel is not satisfied with instructions that are given, or desires the court to give any particular instructions, or to more definitely or sufficiently state any proposition embraced in instructions, it is the duty of counsel to prepare and present to the court such desired instructions and request that they be given. In the absence of such request, the Court of Criminal Appeals will not reverse a case if instructions generally cover the subject matter of inquiry. Schapansky v. State, Okl.Cr., 478 P.2d 912. We, therefore, find this proposition to be without merit.

■ The fourth proposition contends that State's Exhibit No. 1 should not have been admitted because it was improperly identified. We are of the opinion that this proposition is likewise without merit. The evidence on behalf of the State clearly reflects that the chain of custody of the exhibit was never broken from the time the defendant sold the marijuana to the agents until the time it was introduced into evidence.

The fifth proposition alleges that the trial court erred in refusing to permit impeachment of the witness, Kenneth Bates, by showing prior inconsistent statements. Defendant argues that Kenneth Bates testified differently at trial concerning the color of the alleged marijuana than he had testified to previously at the motion to suppress hearing and that he should have been permitted to show the prior inconsistent statements. We are of the opinion that the record does not support defendant's contention that the trial court refused to permit the impeachment of the witness by

showing prior inconsistent statements. The record reflects the following:

"[By Mr. Shears] Q. Do you recall saying, 'at least greenish-brown and more brown than green,' do you recall saying that now?

"A. It's all the same now.

"Q. Well, do you recall what the sample looked like?

"A. I recall a greenish-brown substance. I don't recall whether it was dark brown. At the time you know, uh, you know this has been six months.

"Q. Well, do you recall if you made this statement in January?

"THE COURT: Now you've been over that, Mr. Shears.

"MR. SHEARS: Well, your Honor,—

"COURT: He says more greenish-brown.

"MR. SHEARS: Well, in January he said something else, and I would simply like to refresh his memory by going over this point. I think it's important.

"COURT: He said more greenish-brown.

"MR. SHEARS: But he also stated more brown than green, and I think we should inquire as to if he recalls something here that he doesn't recall then.

"COURT: Is it material?

"MR. SHEARS: I feel it is, your Honor.

"COURT: All right, if you feel it's material, let's get on." (Tr. 88–89)

■ Defendant thereupon continued to examine the witness concerning the color of the substance. It was subsequently adduced that the witness had poor eyesight and a mild form of color blindness. We are of the opinion that the defendant had ample opportunity to question the witness concerning prior inconsistent statements.

The final proposition contends that the verdict was obtained by improper evidence and was not supported by sufficient evidence. Defendant argues that he was prejudiced by the response to a question on cross-examination of the witness, Bates, why he went into undercover work regarding drug cases. Bates testified as follows:

"When I was in high school I had a very good friend of mine that over dosed on some LSD, and it kind of put a mental shock to me, and I have ever since then just more or less made an effort to combat against it." (Tr. 92)

■ We are of the opinion that the subject matter of why Bates went into undercover work was proper cross-examination. On direct examination, the defendant attempted to show that Bates' decision to work as an undercover agent was motivated by monetary considerations. Bates testified that he received remuneration in the form of books, tuition, fees at college, room and board and a part-time job working for the county commissioners. We have previously held that the extent of cross-examination with respect to an appropriate subject rests in the sound discretion of the trial court and it is only in cases of clear abuse of such discretion, resulting in a manifest prejudice to the accused, that this Court will cause a reversal of the case. See Flowers v. State, Okl.Cr., 457 P.2d 833.

In conclusion, we observe the record is free of any error which would require reversal or justify modification and that the evidence of defendant's guilt is overwhelming. The judgment and sentence is, accordingly, affirmed.

In view of the fact that the appellant, through his attorney, has filed a motion to dismiss, we hereby direct the Clerk of this Court to issue the mandate forthwith.

BRETT, J., concurs.