**Billy E. WILLIAMSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. A–18039.

Court of Criminal Appeals of Oklahoma.

May 2, 1973.

An appeal from the District Court of Cleveland County; Alan J. Couch, Judge.

Billy E. Williamson, Appellant, was convicted for the offense of Unlawful Delivery of LSD (lysergic acid diethylamide) and his punishment was fixed at ten (10) years imprisonment and a fine of one dollar ($1.00), and he appeals. Judgment and sentence affirmed.

George W. Thomas, Norman, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Linda Frye, Legal Intern, for appellee.

OPINION

BLISS, Presiding Judge:

Appellant, Billy E. Williamson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Cleveland County, Oklahoma, Case No. CRF–72–428, for the offense of Unlawful Delivery of LSD (lysergic acid diethylamide). His punishment was fixed at ten (10) years imprisonment and a fine of one dollar ($1.00). From said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial John Williams testified that on July 18, 1972, he was employed as an undercover narcotics agent for the Norman Police Department; that defendant came to his apartment, which he shared with his partner, Randy Deason, and told them he could get some LSD. Following this con-

versation, he and his partner contacted Lieutenant Royce Grissom, of the Norman Police Department, and set up a meeting with him. They met Detective Grissom at the city garage, where he searched them for drugs, gave them instructions on how to make a drug purchase, and ten dollars with which to purchase five "hits." He and Deason went back and met the defendant at a Conoco Service Station. The defendant got in the backseat of Mr. Deason's car, and drove a block up the street with them and took the ten dollar bill from him. Then the defendant got out of the car and walked back to the Conoco Service Station. Williams then testified he walked back to his apartment, and when he saw the defendant in a blue Mustang with three other people coming down the street, he went out to the car where the defendant handed him a brown paper sack with the pills in it. He put the paper sack in his front pocket and went to meet Mr. Deason at the Golden Cue, where they had previously arranged to meet the defendant. From there they went to the city garage, where he turned over the purchase to Lieutenant Grissom, who put it in a small manila envelope. Williams identified State's Exhibit 1 as the brown paper sack and pills he received from the defendant.

Randy Deason next testified that he was employed on July 18, 1972, as a narcotics undercover agent for the Norman Police Department and that he was John Williams' partner and roommate. Deason's testimony was substantially the same as Williams'.

Royce Grissom, Lieutenant with the Norman Police Department, testified that on July 18, 1972, he was an undercover narcotics agent; that Randy Deason and John Williams were employed on that date by the Norman Police Department to make buys of narcotics and turn the evidence over to him. Lieutenant Grissom knew the defendant and saw him on the 18th day of July 1972. He contacted Deason and Williams near the city garage about 6:55 p. m. that day. After talking to Mr. Deason and Mr. Williams a few minutes, he searched them and their vehicle looking for money or narcotics, and found nothing. Thereafter, he gave Williams a ten dollar bill with the serial numbers recorded and observed him put the bill in his pocket. Upon the conclusion of this meeting, he followed Deason and Williams back uptown to the campus corner, where he saw them stop, park their car, get out and talk to some people in front of the Golden Cue. After a brief conversation, he saw them return to their car and drive to the Conoco Service Station where the defendant walked up and started talking to them. The defendant got into the car with them, rode to the north side of the station and then got out and walked back to the service station. Williams then got out of the car and walked back towards the service station, then retraced his steps and headed back south. Lieutenant Grissom followed Williams and observed him cut down an alley between some apartments and back to his own apartment. Williams waited a few minutes in front of his apartment, then returned to the street when a blue Mustang drove up. Williams went to the passenger side of the car, talked to a person inside, and received a small package. He then walked back to the laundry to meet Deason, from where they drove back to the city garage area. Back at the city garage, Grissom searched Williams and found a small brown package in his pocket with five green tablets in it. After taking the substance from Williams, he placed it in a small yellow envelope, which he initialed and dated, and kept in his possession until he delivered same to the State Crime Bureau Laboratory three days later.

Ron Clodfelter, a chemist for the Oklahoma State Crime Bureau, next testified. He identified State's Exhibit 1 as that which he analyzed on August 21, 1972. He testified after he examined and tested the tablets he concluded that the tablets contained LSD.

The defendant did not take the stand nor present any evidence in his behalf.

■ It is defendant's first contention that 63 O.S.1971, paragraph 2–401(B)(2) is unconstitutional in that said statute prohibits suspended sentences, deferred sentences or probation. Therefore the legislature has exceeded its constitutionally limited powers by invading the judicial domain.

In the case of Black v. State, Okl.Cr., 569 P.2d 941 (1973), this Court stated:

"In conclusion, we observe that the provision of 63 O.S.1971, § 2–401, which prohibits the suspension of a sentence upon conviction of a sale of the enumerated items is constitutional. We further observe that such prohibition does not represent an encroachment upon the Judicial Branch by the Legislature, nor does the same violate the Fifth, Eighth, or Fourteenth Amendments to the Constitution." . . .

We therefore find no merit in this proposition.

The defendant, under proposition number two, alleges that the trial court effectively denied him a preliminary examination by overruling his motion to produce or dismiss.

The record reveals that a preliminary hearing was held in the instant case on October 17, 1972, where the defendant was bound over for trial. On November 14, 1972, the defendant filed a motion to produce or dismiss alleging that it was necessary to have the addresses of witnesses Randy Deason and John Williams and moved the court to require the District Attorney to produce the addresses or dismiss the case. The information in the instant case listed both witnesses, Deason and Williams, address as "Norman Police Department."

■ The purpose in requiring the State to furnish the defendant with the names and addresses of the witnesses to be used by the State is to apprise the defendant of who the witnesses are and where they can be found. See Sprouse v. State, Okl. Cr., 441 P.2d 481 (1968).

■ The record in the instant case is silent as to whether or not the defendant was able to locate the aboved named witnesses from the addresses given. Absent a showing that the defendant was unable to locate these two witnesses, we are of the opinion that there was no abuse of discretion in the trial court's overruling defendant's motion to produce or dismiss. Nor do we find that the defendant was deprived of a preliminary examination. We therefore find no merit in this proposition.

The defendant's final proposition of error asserts that he was denied his right to a speedy trial, alleging that there was a delay of fifty-four days between the commission of the crime and defendant's arrest.

The record in the instant case reveals that the last "buy" made by the undercover agents in this case was made on August 25, 1972, and that the largest number of "buys" were made in August 1972. (Tr. 123, 124).

■ In ruling on a similar proposition, this Court in the case of Delaney v. State, Okl.Cr., 507 P.2d 564 (1973), stated:

"In the instant case, the State delayed filing the charges for six weeks during which time the defendant was at liberty and the undercover investigation was continuing. Considering the time, expense and training involved in obtaining a competent undercover agent it would cast an undue burden upon the prosecution to require that the identity of the undercover agent be disclosed by filing charges immediately after each purchase. We are of the opinion that there was good cause to delay the filing of the instant charge." . . .

We therefore are of the opinion that there was good cause in the instant case to delay the filing of the charges to avoid disclosing the undercover agents' identities.

In conclusion, this Court observes that the record is free of any error that would

justify modification of sentence or require reversal of the verdict. The judgment and sentence is therefore affirmed.

BUSSEY, J., concurs.

BRETT, J., concurs in part and dissents in part.

BRETT, Judge (concurs in part and dissents in part):

I concur that this conviction should be affirmed; but I dissent to the conclusions reached with reference to the suspension of sentence, which I consider to be a judicial function. See my dissent in Black v. State, supra.