**Thomas Wesley WEBB, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–396.**

Court of Criminal Appeals of Oklahoma.

March 26, 1974.

Rehearing Denied April 17, 1974.

Jones, Williams, Bane & Klingenberg, Enid, for appellant.

Larry Derryberry, Atty. Gen., Bill James, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Thomas Wesley Webb, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–458, for the offense of Concealing Stolen Property. His punishment was fixed at one (1) year in the Oklahoma County Jail and a fine of Five Hundred ($500.00) Dollars. From said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the facts reveal that on the 16th day of January, 1973, the home of Mr. and Mrs. Robert King Kepley II was burglarized and five rifles were stolen, along with certain other items of personal property of the Kepleys. The parties stipulated that these same rifles were exchanged two days later at defendant's service station with Mr. B. Jack Henry, a criminal investigator employed by the Alcohol, Tobacco, and Firearms Division of the United States Department of the Treasury, and with a Mr. R. E. "Buddy" Morton, a confidential informant working with Agent Henry. While defendant admitted the stolen rifles were at one time in his possession, the testimony differed sharply as to his knowledge that they were stolen. The State claimed that the rifles were exchanged with Agent Henry for a sum of money in connection with an investigation involving defendant. Mr. Morton was portrayed as a confidential informant who introduced Agent Henry to defendant as a potential customer in stolen goods. Several preliminary meetings between these parties took place, in the course of which defendant made several inculpatory statements introduced by the State as circumstantial proof of his guilty knowledge of the stolen character of the items he had for sale. Agent Henry testified that the sale of the rifles on January 18th took place in the bay area of defendant's service station, behind locked doors and covered windows. He also related inculpatory statements and furtive actions made by defendant tending to indicate defendant's guilty knowledge that the rifles were stolen. For example, defendant was said to have wiped his fingerprints from each rifle and to have urged Agent Henry and Mr. Morton to do the same. In answer to Agent Henry's question as to whether the rifles had been stolen locally, defendant replied that he was almost certain that they had been, since he dealt mostly with local thieves. Defendant also cautioned Henry and Morton to keep the guns well covered in the bed of their pickup truck as they were leaving the station after the exchange had been made.

In contrast, defendant claims that he obtained the rifles in lieu of rent from a tenant in one of the apartment buildings which he owned. The tenant was not available to testify, nor did defendant know of his whereabouts. Defendant says he then gave the rifles to Mr. Morton in exchange for a sum of money and several cases of motor oil to be sold at the service station. He identified Mr. Morton, who did not testify, as a motor oil salesman from whom he had purchased oil in the past. Defendant denied the inculpatory statements attributed to him by the State, and claimed that the doors and windows to the bay area of his service station were not locked and covered at the time of the transaction.

In his first assignment of error, defendant contends that the trial court's instruction #3A unconstitutionally shifted the burden of proof to the defendant to explain away a presumption of guilty knowledge arising from the fact of possession of stolen property. The instruction in question reads as follows:

"The possession of recently stolen property found in the possession of one alleged to have received it, knowing at that time or having reasonable cause to believe that it was stolen property, *may be explained*, but such possession is a circumstance which, *if unsatisfactorily explained to the jury,* may be considered in determining the guilt or innocence of the person charged with receiving stolen property.

The mere possession of property recently stolen is not alone sufficient to convict the possessor of knowingly concealing stolen property, or of having reasonable cause to believe that it was stolen property, but when such fact is supplemented with other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the jury to pass upon as to the guilt or innocence of the defendant of knowingly

concealing stolen property." [Emphasis added]

Defendant's position is that the above instruction has the same constitutional defect as the instruction found in 21 O.S. § 1713, which reads:

"Every person who, without making reasonable inquiry, buys, receives, conceals, withholds, or aids in concealing or withholding any property which has been stolen, embezzled, obtained by false pretense or robbery, or otherwise feloniously obtained, under such circumstances as should cause such person to make reasonable inquiry to ascertain that the person from whom such property was bought or received has the legal right to sell or deliver it shall be *presumed* to have bought or received such property knowing it to have been stolen or wrongfully obtained. *This presumption may, however, be rebutted by proof.*" [Emphasis added]

As defendant correctly points out, this statutory provision was declared unconstitutional by this Court in Payne v. State, Okl.Cr., 435 P.2d 424. It was there held to be violative of due process in that it shifted the burden of proof to the defendant to either come forward with proof of honest possession or suffer the rebuttable presumption of guilty knowledge. And, said the Court, *the presumption that guilty knowledge could be imputed from the fact of mere possession was illogical.*

The instruction involved in the instant case, however, does not involve a *presumption* of guilty knowledge. While a rebuttable *presumption* might oblige the jury to impute guilty knowledge in absence of contra proof by defendant, the instruction here states only that possession which is unsatisfactorily explained *may* be considered by the jury in determining guilt or innocence. Accordingly, the defendant here has not been significantly prejudiced for the same reasons as set forth in Miller v. State, Okl.Cr., 481 P.2d 175. In *Miller*, supra, an instruction virtually identical to the one in question here was approved by this

Court on the basis of an accompanying instruction which made it adequately clear to the jury that the burden of proof was on the State to prove each material fact of the case against defendant beyond a reasonable doubt. Defendant here incorrectly claims that there was no such saving instruction. In fact, the trial court's instruction # 2, which states:

"Under the law every person is presumed to be innocent until his guilt is proved beyond a reasonable doubt . . ."

operated as just such a saving instruction. The trial court instruction # 3B does the same, stating:

". . . to warrant a conviction upon circumstantial evidence each fact necessary to the conclusion sought to be established (that is, the guilt of the defendant), must be proved by legal and competent evidence beyond a reasonable doubt."

The trial court instruction # 4, after listing the elements necessary to establish defendant's guilt, again reiterates:

". . . if you (i. e. the jury) find from your consideration of all the evidence that any one or more of these elements has not been proved beyond a reasonable doubt, you must find the defendant not guilty and so state by your verdict."

Thus, it is clear from a review of the instructions given in the instant case that the effect of instruction # 3A was only to indicate to the jury that it *could* properly draw inferences from the fact of possession; not that it *must* conclude that defendant possessed guilty knowledge in absence of satisfactory explanation. When read together with the accompanying instructions set out above, it is clear that instruction # 3A was not erroneous.

■ An additional theory put forth by defendant in challenging instruction # 3A is that it violated his Fifth Amendment right against self incrimination. Defendant cites Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965),

which held unconstitutional comment by the prosecutor on defendant's failure to testify in his own behalf. *Griffin*, supra, also prohibited instructions to the jury, which read:

". . . As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable."

Both the comment and the instruction were held violative of the Fifth Amendment as penalties imposed for the exercise of a constitutional privilege, in that they cut down on the privilege by making its exercise costly. Defendant here attempts to equate the effects of the *Griffin* instruction with # 3A in the instant case. He claims that # 3A, in instructing the jury that it *may* consider unsatisfactorily explained possession *in determining guilt or innocence*, is just as constitutionally defective as the instruction in *Griffin*, supra, where the jury was instructed that if defendant failed to deny or explain evidence of facts within his knowledge, the jury *may* take such failure into consideration *as tending to indicate the truth of such evidence.*

We feel constrained to reject defendant's argument for two reasons. First, it is apparent upon review of the phrases in the two instructions italicized above that the instructions are distinguishable in the degree of importance attached to a defendant's failure to satisfactorily explain. The *Griffin* instruction hints rather strongly that such failure to explain is to be taken by the jury as almost a tacit admission of the damning evidence; here, the jury is told only that such failure is a factual circumstance which may be considered in determining guilt. Thus its tenor is much more neutral and even-handed than the instruction in *Griffin,* supra. Where, as here, an instruction merely informs the jurors that an element of the case before them may be considered by them in performing their functions as triers of fact, this Court does not feel that such instruction ". . . solemnizes the silence of the accused into evidence against him." *Griffin*, supra, 85 S.Ct. at 1233. While instruction # 3A is not wholly flawless (i. e., it might be a better practice to delete the phrase, ". . . if unsatisfactorily explained to the jury . . .") it is nevertheless verbally distinguishable from the *Griffin* instruction, and is not incompatible with a defendant's Fifth Amendment right against self incrimination. A second reason requiring this result is the significant difference in facts between *Griffin*, supra, and the instant case. In *Griffin*, supra, for example, the defendant did not take the stand in his own behalf, and such failure to testify was repeatedly emphasized by the prosecutor in his comments to the jury. Here, the defendant did testify in his own behalf, and offered an explanation as to why the stolen rifles were in his possession. The obvious fact that the jury chose to disbelieve him can thus be traced as easily to the possibility that they found his explanation unconvincing as it can to the possibility that they acted upon a presumption implanted in their minds by a suggestive instruction. Thus, whether argued on the basis of the Oklahoma precedent exemplified by *Miller*, supra, or on the United States Supreme Court holding in *Griffin*, supra, we find trial court instruction # 3A to be free of the defects attributed to it by defendant.

 This Court also feels that since there was no fundamental error in giving instruction # 3A, as discussed above, defendant has not preserved his right to object to that instruction on appeal. As the State accurately points out in its brief, this Court has repeatedly held that defense counsel should present requested instruc-

**830**

tions to the trial court if dissatisfied with instructions that are given. Delaney v. State, Okl.Cr., 507 P.2d 564 (1973); Schapansky v. State, Okl.Cr., 478 P.2d 912 (1971). In absence of such a requested instruction, and in absence of fundamental error, this Court will not reverse if the instructions generally covered the subject matter of the inquiry. Here, instead of submitting a requested instruction, defense counsel merely excepted to each and every instruction of the trial court. This, plus the fact that the instruction was not fundamentally erroneous, is sufficient reason for us to dispense without further discussion of defendant's objection to instruction # 3A.

▮▮▮ Defendant's second proposition of error involves consideration of two areas of objection which will be discussed separately. First, he claims that the prosecutor's closing arguments were prejudicial. He lists nine separate comments made by the District Attorney, most of them alluding to defendant as a "fence," and "operator in stolen goods," a "contact man for thieves," etc. Defendant points to a Motion in Limine which he made and which was sustained by the trial judge at the outset of the trial. In sustaining the Motion, the trial judge directed the prosecutor not to refer to the defendant by any reputation as a fence which defendant had, or which the prosecutor thought he might have. Thus, defendant contends, that the nine listed remarks were violations of the Order in Limine and were prejudicial innuendos rather than arguments on the facts. We disagree. First, defendant has waived his objections to all but two of the remarks because of his failure to object to them at trial. See Neal v. State, Okl.Cr., 506 P.2d 936; Cannon v. State, Okl.Cr., 507 P.2d 584; and Byrum v. State, Okl.Cr., 507 P. 2d 1293. We will proceed to consider the two remaining remarks by the prosecutor to which defendant has properly preserved the record. The first allegedly prejudicial remark involved a comment by the prosecutor as to defendant's demeanor during the State's closing argument. Specifically,

the prosecutor interrupted his closing argument and asked the court reporter to "let the record reflect the defendant laughing and smiling at this point." We agree with the State and with the trial judge that this remark was not prejudicial as the defendant's demeanor was open to the jury's observation even without the comment. The fact that the prosecutor may have helped call attention to it by comment is of secondary importance at most. The second remark of the prosecutor properly challenged by the defendant was as follows:

". . . I submit to you that *under the evidence* you've heard, this defendant is a brazen trafficker in stolen loot and he went far beyond the elements necessary to constitute this crime. And, *under the evidence,* this defendant is a contact man for thieves and he buys and sells stolen property which, in turn, he keeps house burglars going and in business. I submit to you then if it weren't for this defendant and others like him, that burglars would be out of business . . ." [Emphasis added]

We feel that the above remarks contained only permissible inferences from the evidence, especially since the prosecutor twice used the phrase "under the evidence," as italicized above. And the "evidence" on which the prosecutor based his inference is clearly traceable to Agent Henry's account of the various meetings at which defendant was said to have made inculpatory statements as to his dealing with thieves. This Court has repeatedly held that the right of argument contemplates a liberal freedom of speech and wide range of discussion, illustration and argument. Counsel, both for the State and defendant, are entitled to discuss fully from the standpoint of each, the evidence and the inferences and deductions arising therefrom. Vaughn v. State, Okl.Cr., 497 P.2d 769; Mahler v. State, Okl.Cr., 465 P.2d 765, cited by defendant in support of this claim, is not in point, as it involved remarks made at trial which were much more prejudicial to the defendant than those made here. For example, the defendant there was referred to as a

"thieving little bastard," and there were so many remarks about his past criminal record and other offenses which he had allegedly committed that this Court remarked that it was difficult to determine for what the defendant was being tried. The record in the instant case is devoid of such prejudice and confusion. We thus conclude that there was no reversible error in the above remarks made by the prosecutor.

The second contention contained in defendant's second assignment of error is an attempt to point out conflicts and prejudicial statements in Agent Henry's testimony. Particularly, defendant objects to the mention of several items which he was said to have had for sale. We find this objection without merit, and sustain the trial court's findings without further comment. Defendant also raises the possibility of conflicts in the testimony as to whether or not the bay area of the service station was locked and covered (i.e., whether the rifles in question were in fact concealed from public view). As to this question we defer, as we must, to the findings of fact made by the jury. See Boyle v. State, Okl.Cr., 507 P.2d 948.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly

Affirmed.

BLISS, P. J., and BRETT, J., concur.

OPINION ON REHEARING

BUSSEY, Judge:

On March 26, 1974, this Court affirmed defendant's conviction of Concealing Stolen Property. From that opinion defendant has filed a Petition for Rehearing.

Defendant argues that our opinion on his appeal was in conflict with the decision rendered by the United States Supreme Court in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and with a decision cited therein, Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). In Turner, supra, the defendant was charged with knowingly receiving, concealing, and transporting heroin and cocaine which he knew had been illegally imported. He was also charged with knowingly purchasing, dispensing, and distributing heroin and cocaine not in or from the original stamped package. The pertinent part of that opinion involved an instruction given by the trial court, in accord with several federal statutes, that defendant's unexplained possession of heroin and cocaine would support an inference by the jury that he knew they had been illegally imported. The Supreme Court affirmed the convictions as to heroin, but reversed them as to cocaine. The basis for the Court's distinction between the two was founded upon its use of a "rational connection" test in analyzing the statutory presumptions arising from possession of each drug. Specifically, the Court found that there was a rational connection between possession of heroin and the twin presumptions that it had been illegally imported and that defendant had knowledge of such illegal importation. The Court found such a rational connection because of the fact that most domestically-possessed heroin was widely known to be imported, hence it was proper for the jury to make both of the above presumptions. On the other hand, because more cocaine is lawfully produced in the United States than is illegally imported, the same two presumptions as applied to cocaine were without a rational connection.

In Leary, supra, the Court found the presumption that a defendant knew that marijuana found in his possession had been illegally imported to be without rational connection. Due to the large amount of marihuana produced in the United States, the Court felt it was irrational to presume that a defendant in possession of the drug, knew that it was imported and not domestic.

In the argument presented in support of his Petition for Rehearing, defendant claims that the two above-cited cases should be considered by us to render the trial court's Instruction # 3A an unconsti-

tutional shifting of the burden of proof from the State to the defendant. Defendant also reiterates the argument made in his appeal that the instruction placed a costly premium on the exercise of his right to remain silent.

We disagree. Both *Turner* and *Leary* involved statutory *presumptions* on which the jury was instructed. As we pointed out in our initial decision, the instruction in the instant case does not raise a *presumption* of guilty knowledge from the mere fact of possession. Rather, it allows the jury to take unsatisfactorily explained possession into account as a *circumstance* in determining guilt or innocence. In response to defendant's argument over the alleged shifting of the burden of proof, we refer again to Miller v. State, Okl.Cr., 481 P.2d 175 (1969), cited in our opinion. As to his arguments concerning self-incrimination, we refer to our discussion of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

The cases cited by defendant in his Petition for Rehearing are thus, inapplicable, and we find our initial decision to be controlling.

The Petition for Rehearing is accordingly, denied, and the Clerk of this Court is directed to issue the Mandate forthwith.

BLISS, P. J., and BRETT, J., concur.