Floyd Carver HARRIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–468.

Court of Criminal Appeals of Oklahoma.

June 13, 1974.

Leslie R. Earl, Chief Public Defender, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., John Wilkinson, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Floyd Carver Harris, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF-73-228, for the offense of Armed Robbery. His sentence was fixed at an indeterminate sentence of not less than twenty (20) nor more than fifty (50) years imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The facts, as revealed at trial, are as follows. At around 3:00 to 3:30 a. m. on the morning of July 21, 1971, a Quick Trip convenience grocery store in Tulsa was robbed of approximately $80.00. During the course of the robbery the attendant, Ronald Baker, was shot in the forehead with a low-caliber pistol. He died shortly thereafter. Apparently there were no eyewitnesses to the incident.

At trial, the State introduced the testimony of Mr. Calvin Harlow, a customer who entered the store a short time after the robbery. He testified that he called the Highway Patrol after noticing that the counter area of the store was in disarray and the attendant was nowhere to be found. Next, the State presented Mr. Stephen Andrew Tolley and Mr. J. Mike Williams, who testified that they passed by the Quick Trip on their way home from work at around 3:00 to 3:30 a. m. They noticed a large white car parked near the store and saw a tall, slender black man walking from the general direction of the car toward the store. The car's motor was running, its lights were off, and neither Tolley nor Williams were able to identify the black man they saw walking nor any of the occupants of the car.

The next witness for the State was John Scott, who at that time was the District Supervisor for the Quick Trip grocery chain. He testified that he inventoried the store shortly after the robbery and established that there was approximately $80.00 missing.

Debra Avants testified that defendant Harris had been at her home on and off all day on July 20, 1971, and, along with Thomas Harris (no relation to defendant), Reginald Avants (witness Debra Avants' husband), Willie Horn, and witness Debra Avants were present at her home at approximately 12:30 a. m. on July 21, 1971. Around 1:00 a. m. Mike Booker and Reginal Henderson arrived. She then overheard a conversation between Reginald Avants, the defendant, and Thomas Harris, during which they discussed robbing a store. Debra Avants saw a small pistol belonging to her husband in the hands of the defendant. Between 1:30 and 1:45 a. m., the defendant, Thomas Harris, Mike Booker and Reginal Henderson left, presumably in Mike Booker's car. Reginald Avants remained at the home and went to sleep. Debra Avants stated that she remained at home talking with Willie Horn. Some time between 3:00 and 4:00 a. m. the defendant, Thomas Harris, Booker and Henderson returned. The defendant and Thomas Harris went to the room in which Reginald Avants was sleeping and awakened him. Debra Avants then overheard a conversation in which the defendant said that he had taken the store attendant to the back of the store and had shot him in the head to prevent him from identifying him as the robber. She further testified that she observed the defendant and Thomas Harris counting and dividing money. She heard Thomas Harris say that he had experienced some difficulty in opening the cash register, had turned it over on its side, and had spilled some change on the floor in doing so.

The State's next witness, called out of sequence, was Tulsa Police Officer Bob Maras, who testified that he had been dispatched to the scene at approximately 3:26 a. m. after Mr. Harlow had called the authorities. On arriving, he found Mr. Harlow in front of the store. Inside, he found the store in disarray, with the cash register pulled over on its side, and money and merchandise scattered on the floor. In the back of the store he found Mr. Baker lying unconscious with a bullet wound in his forehead. On cross-examination by defense counsel, Officer Maras stated that other offficers arrived shortly thereafter, and one officer took photographs and dusted the cash register area for fingerprints. Officer Maras volunteered the statement that the fingerprint of codefendant Thomas Harris was discovered, but the court ordered it stricken as a conclusion of the witness.

The next witness for the State was Reginald Avants, who was at the time of trial, incarcerated in the Oklahoma State Penitentiary for an unrelated crime. His testimony was substantially the same as that of his wife, Debra, as to the various meetings and conversations at their home on the night in question. He stated that before the defendant, Thomas Harris, Booker and Henderson left, Booker said that he was going to drive the car, Henderson was going to sit in the car, and the defendant and Thomas Harris were going to go into the store. He (Reginald Avants) loaned Floyd Harris a .22 pistol. When the four returned about 45 minutes later, the defendant and Thomas Harris made the inculpatory statements as related above by Debra Avants. There were two or three spent cartridges in the .22 pistol earlier loaned to the defendant.

The next two witnesses were Mike Booker and Reginal Henderson, both of whom testified that the events on the night in question occurred substantially as set forth in Debra Avants' testimony.

Defendant's first witness was Lester Turley, who was a customer in the store, apparently just before the robbery. He testified that he had purchased some cigarettes at the store and noticed a white car with large antennae on the back, sitting in front of the store with two unidentified white occupants. When he returned about 20 minutes later to buy some beer, Mr. Harlow was in front and told him that the attendant was missing. Turley then left.[1]

At this point in defendant's case, defense counsel asked the court for a continuance, stating that he had been approached that morning by a private detective claiming to have information that would tend to exonerate defendant. An evidentiary hearing was held, during which it developed that the allegedly exculpatory evidence was based on a statement made to the private detective by a woman who claimed to have overheard someone other than defendant Floyd Harris confess to the crime. However, during the evidentiary hearing this woman admitted that she had lied to the private detective, and that the other individual had never, in fact, confessed to the crime. The court then denied defendant's Motion for Continuance. As the matters raised in the evidentiary hearing are not before us on appeal, further discussion is unnecessary.

Defendant then took the stand in his own behalf. He testified that he knew nothing about the robbery or related events. He did not remember his whereabouts at the time of the robbery, but stated only that he may have been in some clubs that morning. He claimed that the testimony of Reginald Avants, Debra Avants, Mike Booker, and Reginal Henderson was perjured, and that they were all merely trying to "get their neck out of a sling."

The State then presented a rebuttal witness, Charles Corey, Jr., who stated that he and his brother-in-law, both white men, had been customers at the Quick Trip at around 3:00 to 3:30, and had been driving

<hr>

1. Apparently the inference intended to be drawn from Turley's testimony was that the two unidentified white males were possibly the real perpetrators of the crime.

a white Chevrolet with a large ham radio antenna on the back of the car. He also testified that he and his brother-in-law had seen a car fitting the description of that driven by defense witness Turley.[2]

Defendant's first assignment of error on appeal concerns instructions given by the trial court. Specifically, he argues that the jury should have been instructed that Reginald Avants was an accomplice as a matter of law, whose testimony would have to be independently corroborated. The two pertinent instructions which were given are as follows:

"INSTRUCTION # 8—You are instructed that the witnesses Michael Booker and Reginal Henderson are what is termed in law as accomplices to the crime of which the defendant here stands charged, and for that reason you cannot convict the defendant upon the testimony of such witnesses, unless you find that such testimony is corroborated as required in the foregoing instructions.

"INSTRUCTION # 9—You are further instructed that as to the witnesses Debra Avants and Reginald Avants, you are to determine from the foregoing instructions whether or not each witness is an accomplice to the crime of which the defendant here stands charged, and if you determine that one or both of said witnesses is an accomplice, then your are instructed that you cannot consider the testimony of that witness, unless you find that such testimony is corroborated as provided in the foregoing instructions."

Defendant's position is that since Reginald Avants was present during the discussion preceding the robbery, at one point admitting that he was "agreeing" to what was being said, that he was an accomplice as a matter of law, and the court should have so instructed.

We find this assignment of error to be without merit, as defendant has not properly preserved this alleged error for our consideration on appeal. The record shows that, while defendant did orally object to the above quoted instructions, he failed to submit written requested instructions. In Webb v. State, Okl.Cr., 520 P. 2d 825 (1974), we stated:

". . . [T]his Court has repeatedly held that defense counsel should present requested instructions to the trial court if dissatisfied with instructions that are given. . . . In absence of such a requested instruction, and in absence of fundamental error, this Court will not reverse if the instructions generally covered the subject matter of the inquiry. . . ."

We find that the instructions given in the instant case fall within the *Webb* rule.

In his second assignment of error, defendant argues that the court should have sustained his Motion for Mistrial based on a reference made by the prosecutor in his closing argument, to the crime of Murder. The transcript shows that the prosecutor, in paraphrasing a statement made by defendant which had been related on the stand by Debra Avants, stated that defendant might have said, "If nobody tells anybody, they won't nobody find out that I pulled the robbery and the murder." Defendant supports this proposition that this remark was erroneous by citing Thompson v. State, Okl.Cr., 462 P.2d 299 (1969), as standing for the proposition that it is improper and prejudicial for a prosecutor to refer to other crimes committed by a defendant at the scene of the crime for which he was charged. This broad statement is inapplicable to the instant case. In *Thompson,* supra, the defendant was charged with Murder, but the prosecutor referred to the completely unrelated crimes

2. Apparently the State's purpose in presenting Mr. Corey in rebuttal was to contradict the inference left by Mr. Turley's testimony, i. e. that there was a white car other than defendant's at the scene, and that possibly the two white occupants were the actual perpetrators of the crime. Mr. Corey's testimony inferred that the two white males in question were, in fact, he and his brother-in-law rather than possible perpetrators.

of Burglary and Carrying a Firearm, After Former Conviction of a Felony. He also called defendant a "second-time killer," and improperly injected his opinion as to defendant's failure to call certain witnesses.

The situation in the instant case is analogous to that of Schneider v. State, Okl. Cr., 501 P.2d 868 (1972), where we cited King v. State, Okl.Cr., 456 P.2d 121 (1969), as follows:

". . . In the second paragraph of the Syllabus of Zeigler v. State, 76 Okl. Cr. 34, 133 P.2d 912, this court held:

'The introduction of evidence in a criminal case is subject to such restrictions or limitations as the trial court in its discretion may decide.'

"Certainly, in a Robbery with Firearms case, where a material element of the crime is force or fear, the shooting of the victim is significantly material in proving that element of the crime, and it is not inadmissible merely because it may prove the defendant guilty of another crime. See Parnell v. State, Okl.Cr., 389 P.2d 370, and Cornelius v. State, Okl.Cr., 438 P.2d 295. . . ."

We view the fact that the attendant was murdered in the instant case to be just as material to the element of force and fear as was the fact that the victim in Schneider, supra, was shot. As such, there is a connection between the crime charged (Armed Robbery) and the crime mentioned (Murder), sufficient to take the instant case out of the *Thompson* rule. Thus, we find this proposition of error to be without merit.

■ In his third assignment of error, defendant objects to two separate comments made by the prosecutor in his closing argument. The first comment was as follows:

". . . And this robbery case, ladies and gentlemen, is just a little bit different than the usual robbery case. It is an armed robbery case, but usually, ladies and gentlemen, we have a victim. We have a victim who can get on the stand and he can testify from the stand—do you see the person in the courtroom who stuck the gun in your face and said, I'll kill *you if you don't give me all your money?* Yes, I do, he's sitting right over there at counsel table wearing a green jacket with leather on it. We don't have that in this case. We don't have that. Mr. Ronald Baker [3] would give anything, I imagine, to be able to come down here and get on the stand, 'Yes, this is the man that shot me,' but it didn't turn out that way."

It is defendant's contention that the court should have sustained his Motion for Mistrial based on this remark, as it improperly appealed to the passion and prejudice of the jury. We disagree. First, we refer to a long-standing rule of this Court set forth in Battle v. State, Okl.Cr., 478 P.2d 1005 (1970), quoting from Harvell v. State, Okl.Cr., 395 P.2d 331 (1964), as follows:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom. *It is only when argument by counsel for the State is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument.*" [Emphasis added]

Also applicable is the following language from Ramos v. State, Okl.Cr., 445 P.2d 807 (1968), quoting from Williams v. State, 93 Okl.Cr. 260, 226 P.2d 989 (1951):

"Courts are very liberal in allowing attorneys to present their views in their arguments to the jury and it is only when they purposely go outside of the record for the purpose of exciting the passion and prejudice of the jury so as to cause

---

3. The store attendant who was killed.

them to act in a biased manner will the courts interfere so as to set aside the verdict. . . ."

It is our opinion that the prosecutor's comment was within the above two rules.

Also, we note that the jury returned a verdict of from 20 to 50 years imprisonment, although the prosecutor asked for a sentence of not less than 1,000 years imprisonment. This mitigates defendant's claim that the jury was prejudiced by the prosecutor's comment, and convinces us that the objection raised by defendant is without merit.

■ The second objection raised within defendant's third assignment of error concerns the mention by the prosecutor, in his closing argument, that a fingerprint belonging to co-defendant Thomas Harris, was discovered at the scene of the crime. Defendant claims that, although there was testimony to the effect that fingerprints were taken at the scene of the crime, there was no testimony identifying the prints. Thus, argues defendant, the identity of the fingerprint of Thomas Harris was a matter not in evidence and should not have been raised in the State's closing argument. At trial, defense counsel's Motion for Mistrial, based on the prosecutor's mention of the fingerprint was overruled by the court because defense counsel himself had "opened the door" to its discussion by remarks made during his own closing argument. Those remarks were to the effect that, since the State had established that the police had dusted for fingerprints, yet no evidence was introduced to show that any of defendant's prints were discovered, that the State had failed to adequately place him at the scene of the crime. Defendant further argues on appeal that these remarks only "opened the door" to discussion of the defendant's prints, not to the prints of Thomas Harris. We disagree for several reasons. First, we must point out that we agree with the trial court that the subject of the prints' identity, whether it be of Thomas Harris or defendant, was introduced into the closing arguments by

defense counsel himself. Second, we agree with the observation set forth in the State's brief that the identification of the fingerprint as Thomas Harris' had been made at trial long before the closing arguments. In defense counsel's cross-examination of Officer Bob Maras, the following appears:

"Q. Was any other area besides the case register itself fingerprinted, the counter, any of the other areas?

A. I don't think so. Roy lifted a fingerprint from the tray there of Tommy Harris, I think, off this tray.

DEFENSE COUNSEL: I object, ask it to be stricken. Hearsay.

THE COURT: Yes, it's a voluntary statement, and I'll strike it as a conclusion."

Thus, it appears that the question of the fingerprint had been raised in one form or another at least twice during the trial, prior to the time it was mentioned by the prosecutor in his closing argument. Its mention at that point was, thus, harmless error, at most. See 20 O.S.1971, § 3001. This, plus the fact that defense counsel himself opened the door to discussion of the fingerprint in his closing argument, leads us to reject defendant's third assignment of error.

■ Defendant's fourth assignment of error is the allegation that the verdict was contrary to the weight of the evidence. Defendant supports this contention with no argument whatsoever, but merely cites two cases wherein this Court held that there was not sufficient evidence to support the verdict. Suffice it to say that such is not the case here, and we feel there was ample evidence on which the verdict could have been based.

■ Defendant's fifth assignment of error wherein he alleges that the sentence was excessive, is likewise without merit. In asking the Court to modify the sentence, defendant again alleges that the sentence was motivated by passion and prejudice caused by the conduct of the prosecu-

tor. For the reasons cited above in our discussion of defendant's third assignment of error, we again reject this argument.

In his sixth assignment of error, defendant claims that there was such an accumulation of error at the trial that he was denied the fair trial necessary to meet constitutional due process requirements. For all of the reasons set forth above, we find that this proposition is wholly without merit.

The judgment and sentence appealed from is accordingly affirmed.

BLISS, P. J., and BRETT, J., concur.